### Turner v. Heavrin.

(Decided November 15, 1918.)

## Appeal from Ohio Circuit Court.

1. Husband and Wife—Alienation of Affections—Criminal Conversation.—While a married woman could under the common law maintain an action for the alienation of her husband's affections, she could not maintain an action against another woman for

having had criminal conversation with the married woman's husband.

2. **Husband and Wife—Criminal Conversation.**—In its general and comprehensive sense, the term criminal conversation is synonymous with adultery; but in its more limited and technical signification, it may be defined as adultery in the aspect of a tort.

3. **Husband and Wife—Criminal Conversation.**—The reason for the common law rule which allowed the husband to maintain an action for criminal conversation but denied that right to the wife, rested not so much upon any principle of abstract right, as in the subservient relation which the wife occupied at the common law, and because the husband, who was a particeps criminis, must be joined with her as plaintiff.

4. **Husband and Wife—Criminal Conversation.**—The actual injury to the wife for the loss of consortium, which is the basis of the action for criminal conversation, is the same as the actual injury to the husband from that cause; and his right to the conjugal society of his wife is no greater than her right to the conjugal society of her husband.

5. **Husband and Wife—Criminal Conversation—Married Woman May Maintain Action.**—The tendency of modern thought is to abrogate the idea of superior and inferior from the relation of husband and wife; and as, under the Married Woman's Act of 1894 (Ky. Sts., sec. 2128), married women are permitted to sue independently of their husbands and to hold their property separately, the reasons for the distinction which denied her the right to sue for crim. con. have ceased, and a married woman may now maintain an action against another woman for criminal conversation.

J. F. GORDON and H. P. TAYLOR for appellant.

GLENN & SIMMERMAN, W. H. BARNES, BEN D. RINGO and A. D. KIRK, for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

This is an action for damages by Anna Lee Turner, a married woman, against Mary Heavrin. The petition, as amended, stated two grounds of action against the defendant: (1) Her alienation of the affections of plaintiff's husband; and (2) her criminal conversation with him. The plaintiff, however, dismissed so much of her petition as sought damages for the alienation of the affections of her husband, and relied solely upon so much of her petition as sought a recovery for criminal conversation. The plaintiff alleged, in substance, that the defendant debauched and carnally knew her husband, thereby alienating his affections and depriving her of his comfort, society and support. The circuit court dis-

missed the petition, and the plaintiff appeals. So, the only question presented upon this appeal is this: Can a married woman maintain an action against another woman for having criminal conversation with the married woman's husband? The common law unequivocally answered the question in the negative. 21 Cyc. 1627; 13 R. C. L., p. 1487. The question is, however, one of first impression in this jurisdiction.

There can be no doubt about the wife's right to maintain an action for the alienation of her husband's affections, and that right is thoroughly recognized in this jurisdiction. Deitzman v. Mullin, 108 Ky. 511; Scott v. O'Brien, 129 Ky. 1, 16 L. R. A. (N. S.) 742, 130 Am. St. Rep., 419; Merritt v. Cravens, 168 Ky. 155.

And, in Merritt v. Cravens, *supra,* which was an action by the husband solely for the alienation of his wife's affections, there is a dictum to the effect that the law affords two separate and distinct remedies by which "either spouse" may recover damages which they might suffer by reason of the wrongful invasion of any of the marital rights, and that these remedies are a suit for alienation of affections, and a suit for criminal conversation. It is clear, however, that so much of that opinion as might be said to authorize the wife to maintain an action for criminal conversation was beyond the record and wholly unnecessary for the decision. That case, however, fully recognized the distinction between the two classes of actions.

In its general and comprehensive sense, the term criminal conversation is synonymous with adultery; but in its more limited and technical signification, in which it is here to be considered, it may be defined as adultery in the aspect of a tort. A fundamental right which flows from the relation of marriage, and one which the well being of society requires should be maintained inviolate, is that of exclusive marital intercourse which each acquires with the other. From this it follows that whenever either party commits adultery, he or she commits a trespass upon the rights of the other; and from time immemorial the law has given the husband a right of action for damages against a seducer of his wife. But at common law the wife had no such right, though in natural justice there seems to be no good reason why her right to maintain an action against the seducer of her hus-

band should not be as broad as his right of action against her seducer. If one had the right to sue, one would naturally say the other had the same right. But, as above stated, the common law has never seen fit to accord the wife the redress which it accorded to the husband.

All the commentators upon the common law recognize the right of the husband to maintain an action for; crim. con. as exclusively the right of the husband. In 3rd Blackstone, star page 139, it is said:

"Adultery or criminal conversation with a man's wife, though it is, as a public crime, left by our laws to the coercion of the spiritual courts; yet considered as a civil injury (and surely there can be no greater), the law gives a satisfaction to the husband for it by action of trespass *vi et armis* against the adulterer, wherein the damages recovered are usually very large and exemplary."

The reason for this distinction against the wife rested not so much upon any principle of abstract right, as in the subservient relation which the wife occupied at the common law. The husband had a property in his wife's services, and it is upon the loss of this that his right of recovery was formerly placed. But the wife, having no property right in the services of her husband, she could not maintain the action.

In 3rd Blackstone's Commentaries, 143, the reason for this denial to an inferior is stated as follows:

"The inferior hath no kind of property in the company, care, or assistance of the superior, as the superior is held to have in those of the inferior; and therefore the inferior can suffer no loss or injury. The wife cannot recover damages for beating her husband, for she hath no separate interest in anything during her coverture."

Moreover, at common law, in order for a wife to bring an action, her husband must consent to and be joined as a party plaintiff, and whatever damages she might recover would immediately become his property, since the law could not indulge such an indecency as that a man should so profit by his own wrong. 8 Am. & Eng. Enc. of Law (2nd Ed.) 261.

The rule is stated by Bouvier as follows:

"The wife cannot maintain an action for criminal conversation with her husband; and for this, among

other reasons, because her husband, who is a *particeps criminis,* must be joined with her as plaintiff.'' Dict. *verb,* ''Crim. Con.''

The great weight of authority is to that effect, although in some jurisdictions in which it was conceived that the denial of the right to the wife rested principally upon the question of parties and procedure, a different view has been taken since the adoption of the modern married women's acts, authorizing married women to sue alone, and to own and control the recovery.

The general line of reasoning which denied the wife the right to maintain the action was stated in Doe v. Roe, 82 Me. 503, 17 Am. St. Rep. 499, 8 L. R. A. 833, decided in 1890, as follows:

''The question is whether such an action is maintainable. For such a wrong the law does not leave the injured wife without redress. She may obtain a divorce and a restoration of all her property, real and personal, and in addition thereto, alimony or an allowance out of her husband's estate. And the law will punish the guilty parties criminally. But does the law, in addition to these remedies, secure to her a right of action to recover a pecuniary compensation from her husband's paramour? We think not. We have been referred to no reliable authority for the existence of such a right, and we can find none.

''It is true that a husband may maintain an action for the seduction of his wife. But such an action has grounds on which to rest that cannot be invoked in support of a similar action in favor of the wife. A wife's infidelity may impose upon her husband the support of another man's child. And what is still worse, it may throw suspicion upon the legitimacy of his own children. A husband's infidelity can inflict no such consequences upon his wife. If she remains virtuous, no suspicion can attach to the legitimacy of her children. And an action in favor of the husband for the seduction of his wife has been regarded as of doubtful expediency. It has been abolished in England. And the trials we have had in this country of such actions are not very encouraging. They seem to be better calculated to inflict pain upon the innocent members of the families of the parties than to secure redress to the persons injured. And we fear such would be the result if such actions were maintain-

able by wives. Such a power would furnish them with the means of inflicting untold misery upon others with little hope of redress for themselves. At any rate, we are satisfied that the law never has, and does not now, secure to wives such a power, and if it is deemed wise they should have it, the legislature and not the court must give it to them.''

The reasoning of this opinion seems to rest upon the insubstantial distinction that because the law gives a right of action in such cases to the husband on account of his possible greater injury, it should not give any redress to the wife, for a similar act because her injury is of less magnitude, and her right to sue might be abused.

Evidently, pursuant to a supposed public policy as expressed in the foregoing opinion, the action for criminal conversation was abolished in England by section 59 of the Matrimonial Causes Act, 1857 (20 and 21 Vict. c. 85). But that statute provided that the husband, in a proceeding for a dissolution of the marriage, or for a judicial separation on the ground of the wife's adultery, might claim and recover damages from the co-respondent; or, he might, by petition, claim damages for adultery with his wife, without demanding other relief.

Again, in Kroessin v. Keller, 60 Minn. 372, 27 L. R. A. 685, decided in 1895, the Supreme Court of Minnesota, in denying the right to the wife to maintain an action for criminal conversation, stated the reason for the rule in the following language:

''We are quite safe in saying that at common law no such action could have been maintained. The injured husband alone brought crim. con., and he could sustain the action by simply showing the adulterous intercourse. The grounds on which the right to recover was based are well stated in Cooley on Torts, 224, and the principal elements were the disgrace which attached to the plaintiff as the husband of the unfaithful wife—and no such disgrace has ever rested upon the wife, if there was one, of the guilty defendant—and, of more importance, the danger that a wife's infidelity might not only impose upon her husband the support of children not his own, but, still worse, cast discredit upon the legitimacy of those really begotten by him. Because of these elements, the man was always conclusively presumed

to be the guilty party. In the eye of the law, the female could not even give her consent to the adulterous acts, and, as a result, it was no defense in this form of action that the defendant had been enticed into criminal conversation through the acts and practices of the woman. From this statement as to the grounds or elements constituting this action, it will be seen that the principal ones cannot possibly exist or be involved in a similar action brought by the wife. And what has been said about the unavailability of the defense that the defendant himself was the victim, and not the seducer, is suggestive of what the courts might have to hold to be the rule of pleading, and what they might have to inquire into, upon the trial of an action of this kind. Would it be held, following the old rule we have mentioned, and for which the reason seems well founded, that it was no defense for the female sued, to allege and prove that she. was the party seduced, and that the greater wrong and injury had been inflicted upon her, not upon the plaintiff wife? or would the contrary rule prevail? But we need not consider the subject further, for a moment's reflection will suggest the remarkable results flowing from the adoption of either rule." See also note to Nolin v. Pearson, 6 Ann. Cas. 658. Haynes v. Nowlin, 129 Ind. 581, 14 L. R. A. 787, 28 Am. St. Rep. 213, is relied upon by appellant to sustain this action, but that was an action for alienation of affections, and for that reason is not controlling here.

Dodge v. Rush, 28 App. Cas. (D. C.) 149, 8 Ann. Cas. 670, is also relied upon by appellant. In that case, however, alienation of affections was alleged in two paragraphs, and criminal conversation was charged in a third paragraph, it being further alleged that plaintiff was deprived of the attention, society and assistance of her husband by said acts of criminal conversation. The court pointed out the fact that the gist of the action was for the alienation of affections, which is the loss of consortium—that is, the loss of the conjugal fellowship, company, co-operation and aid of the husband, or wife; that loss of consortium is the actionable consequence of the injury, and that alienation of affections is a matter of aggravation. And, the court further stated that while it was necessary to plaintiff's recovery in such an action that she should show that the defendant's misconduct

was an effective cause of the loss of consortium, it was not necessary that it should have been the sole cause, and that any unhappy relations which may have existed between plaintiff and her husband, not caused by the conduct of the defendant, might affect the question of damages, although they would be in no sense a justification or palliation of defendant's conduct. And, although the court rested the plaintiff's right to maintain her action upon the paragraphs of the petition which sought damages for the alienation of her husband's affections, it went further and also sustained her right under the third paragraph for criminal conversation. Upon this latter subject the court said:

"While the injurious consequences of a wife's adultery may be more far reaching because of probable difficulties and embarrassments in respect of the legitimacy of children, her conjugal rights are in principle the same, substantially, as his. Whatever the ancient doctrine may have been, modern morals and law recognize the equal obligation and right of husband and wife. Nor can the consent of either to his or her defilement affect the right of action of the injured spouse against the other wrongdoer."

In Hart v. Knapp, 76 Conn. 135, 100 Am. St. Rep. 989, and again in Miller v. Pearce, 86 Vt. 322, 43 L. R. A. (N. S.) 332, it was held that an action by the wife could be maintained against another woman for alienating the affections of her husband by committing adultery with him, the court holding, in the first case above cited, that carnal knowledge of the husband was as much a civil injury to the wife as carnal knowledge of the wife was a civil injury to the husband.

In Seaver v. Adams, 66 N. H. 142, 49 Am. St. Rep. 597, decided in 1889, the Supreme Court of New Hampshire held that a married woman could maintain an action against another woman for seducing her husband. In reaching that conclusion, however, the court rested its departure from the common law rule upon the fact that the tendency of modern legislation in that state had been to put the husband and wife upon an exact equality before the law, whereby the common law rule of servitude in marriage had been repealed, so that the husband and wife now stand upon an equality of right in respect to property, torts and contracts, subject only to certain ex-

ceptions limiting the liability of the wife upon certain contracts and covenants specified in the statute. In view of the statute giving the wife the right to sue in her own name it was held that the former barbarous common law fiction that her legal existence became suspended during the marriage and was merged into that of her husband, had ceased by reason of the Married Woman's Act of that state and that no reason in natural justice existed why the right of the wife to maintain an action against the seductress of her husband should not be co-extensive with his right of action against her seducer.

In 8th Am. & Eng. Ency. of Law, 2nd Edition, 262, it is said:

"The tendency of modern thought is to abrogate the idea of superior and inferior from the relation of husband and wife, and as, under the statutes which have in recent years been passed in the various states, married women are permitted to sue independently of their husbands and to hold their separate property, the reasons for the distinction would seem no longer to be tenable, and it has been held that under such statutes a married woman may maintain an action for criminal conversation," citing Foot v. Card, 58 Conn. 1, 18 Am. St. Rep. 258; Seaver v. Adams, 66 N. H. 142, 49 Am. St. Rep. 597.

See also Westlake v. Westlake, 34 Ohio St. 621, 32 Am. Rep. 397; Clow v. Chapman, 125 Mo. 101, 46 Am. St. Rep. 468, 26 L. R. A. 412.

The modern rule is well stated by the Court of Appeals of New York in Bennett v. Bennett, 116 N. Y. 584, 6 L. R. A. 553, as follows:

"The actual injury to the wife from the loss of consortium, which is the basis of the action, is the same as the actual injury to the husband from that cause. His right to the conjugal society of his wife is no greater than her right to the conjugal society of her husband. Marriage gives to each the same rights in that regard. Each is entitled to the comfort, companionship, and the affection of the other. The rights of the one and the obligations of the other spring from the marriage contract, are mutual in character, and attach to the husband as husband, and to the wife as wife. Any interference with these rights whether of the husband or of the wife, is a violation not only of a natural right, but also of a legal right arising out of the marriage relation. . . . As

the wrongs of the wife are the same in principle, and are caused by acts of the same nature as those of the husband, the remedy should be the same.''

The late case of Rott v. Goehring, 33 N. D. 413, Ann. Cas. 1918A, 643, decided in 1916, is interesting as illus-trative of the modern tendency to abolish the distinction between the wife's right to bring an action for the alienation of her husband's affections, and for criminal conversation. In that case the Supreme Court of North Dakota said it was immaterial, under the statute abolishing forms of action, whether the action was one for alienation of affections alone, or was for both alienation of affections and criminal conversation, and that, if the facts alleged in the petition, when properly es-tablished, entitled the plaintiff to any relief under the law, she might recover. Having reached the conclusion that the plaintiff had sustained her cause of action for the alienation of her husband's affections, the court concludes as follows:

''Having reached the above conclusion, it is immaterial to plaintiff's recovery whether the complaint also states a cause of action for criminal conversation, and also as to whether the latter kind of action will lie in this state at the suit of the wife. We shall therefore refrain from deciding this question; but the following authorities sustaining such an action may be of interest to the legal profession. They also lend support to our views above expressed: 8 Am. & Eng. Enc. of Law (2nd ed.) 261; Seaver v. Adams, 66 N. H. 142, 49 Am. St. Rep. 597; Dodge v. Rush, 28 App. Cas. (D. C.) 149, 8 Ann. Cas. 671.''

The Married Woman's Act of 1894 (Ky. Sts., sec. 2128) removes one of the common law objections to the wife's right to maintain an action for criminal conversation by empowering her to sue, as a single woman, for the protection of her rights without the consent of her husband; and, we are not much impressed with the remaining ground of the argument based upon a supposed public policy. The public policy of a state is expressed in its constitution and statutes, and in its common law as found in the opinions of its court of last resort. Gathright v. H. M. Byllesby & Co., 154 Ky. 106. But in none of these ways has this Commonwealth heretofore declared its public policy upon this question; and, this be-

ing the first opportunity this court has had of passing upon it, the question is to be decided upon sound principles and authority.

If suits of this character upon the wife's part would tend to raise family dissensions and neighborhood scandals, the same result would be obtained in case the husband brings such an action; and, as above stated, the fact that the husband's injury by the infidelity of his spouse may be of the greater and more serious character, is no answer to the claim upon the part of the wife to maintain a similar action for a less injury. If she is injured at all in such a case (and no one will deny it) she should have the right to maintain her action therefor and the verdict be measured accordingly. But to say that the husband has a right to maintain an action against his wife's paramour and that she should not have a like right of action against his paramour, is to wholly destroy that equality of right which is the boast of our institutions.

It is well known that under the common law the husband was responsible for the wife's slander, upon the supposition that he controlled her actions in that respect. But this theory was evidently incorrect when applied to modern conditions, and in Lane and wife v. Bryant, 100 Ky. 138, 36 L. R. A. 709, this court so held, and refused to be bound by the legal fiction that the husband could control his wife's tongue.

In the course of that opinion this court said:

"The liability of the husband at the common law was based on the idea of his absolute domination over the person of his wife, with the right to all of her personal and the use of her real estate; to the rents and profits of her realty; to her earnings and labor, and the power of the control of the wife by the husband was caused to such an extent as to vest in him the right to use such forcible means as would bridle her tongue or make her of good behavior. This rule is a harsh one at best, and with the progress of civilization, and the changes by wise, modern legislation of the relation between husband and wife as to the right of property and personal control by the husband, it would seem absurd in this enlightened age to regard the wife as a mere machine, made to labor and to talk as the husband directs, and to make him liable on that ground for her torts when not committed by his direction or procurement."

And in that opinion, after pointing out that under our Married Woman's Act of 1894, the common law unity of husband and wife had been destroyed, Chief Justice Pryor paraphrastically quoted from Martin v. Robson, 65 Ill. 139, as follows:

"The legal supremacy of the husband is gone and the sceptre departed from him. The wife has the legal right and aspires to battle with him in the contests of the forum; to outvie him in the healing art; to climb with him the steps of fame, and share with him in every occupation. Her brain and hands and tongue are her own, and she should alone be responsible for slanders uttered by herself."

The reasoning in Deitzman v. Mullin, *supra,* and Haynes v. Nowlin, *supra,* point to the same conclusion. See also Schuler v. Henry, 42 Colo. 377, 14 L. R. A. (N. S.) 1013.

We are, therefore, of opinion that although the common law rule prevented the wife from bringing an action for criminal conversation, it is no longer applicable under our present statute which places the wife upon an equal footing with the husband as to her right to sue for the purpose of protecting and enforcing her rights of every kind and character.

Judgment reversed and action remanded with instructions to overrule the demurrer to the petition as amended and for further proceedings consistent with this opinion.

Chief Justice Settle not sitting.