**Bill LISLE, Appellant,**

v.

**Donald LYNCH, Appellee.**

No. 15943.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 14, 1958.

Rehearing Denied Dec. 12, 1958.

Nelson, Montgomery, Robertson & Sellers, and Lee Sellers, Wichita Falls, for appellant.

Mock & Spell, and Jones, Parish & Fillmore and Elmer H. Parish, Wichita Falls, for appellee.

BOYD, Justice.

Appellee Donald Lynch sued appellant Bill Lisle for damages for alienation of the affections of, and for criminal conversation with, appellee's wife. A trial to a jury resulted in a verdict and judgment for appellee for $10,052.

■ One point for reversal is that the court erred in overruling appellant's plea in abatement based upon appellee's failure to make his former wife a party, they having been divorced prior to the filing of the suit. Appellant contends that since whatever cause of action appellee has arose while the marriage relation existed, it was community property, and the former spouses are now tenants in common, with a right of action existing in favor of the former wife for one-half of the permissible recovery.

We cannot agree. The rule seems to be established that a wife or former wife can maintain such a suit, and there is no reason apparent to us why a husband or former husband cannot do so. Nickerson v. Nickerson, 65 Tex. 281; Burnett v. Cobb, Tex. Civ.App., 262 S.W. 826; Smith v. Womack, Tex.Civ.App., 271 S.W. 209, error refused; Norris v. Stoneham, Tex.Civ.App., 46 S.W. 2d 363; Speer, Law of Marital Rights, 3rd Ed., secs. 109, 110; Burger v. Belsley, 45 Ill. 72. "There has never been any doubt of the husband's right to maintain the action." 23 Tex.Jur., p. 282, sec. 245.

Complaint is made of the admission of letters passing between appellee and his wife, and of appellee's testimony as to statements made to him by his wife.

■ About fifty letters passing between the spouses were introduced, written before and after the wife met appellant. Without setting them out, we think it sufficient to say that the letters tended to show friendly relations and mutual affection between appellee and his wife. It is almost universally held that such evidence is admissible to show the state of the affection of the

spouses, which is always material in such cases. 27 Am.Jur., p. 162, sec. 561; Annotation, 82 A.L.R. at page 825; Jackson v. Jackson, Tex.Civ.App., 35 S.W.2d 830. We think the letters were properly admitted.

According to appellee's testimony, he was married on November 10, 1953. He was twenty-two years of age and his wife was nineteen. They lived first at Olney and then at Wichita Falls. His wife worked as a secretary. He was a member of the National Guard. He left Wichita Falls on September 21, 1955, to attend a National Guard School at Fort Benjamin Harrison in Indiana. He was gone until November 19, 1955. Until that time he and his wife had lived happily together. They wrote to each other every day or two, and he called her by telephone about once a week. The letters which were introduced were exchanged while he was in Indiana. Upon his return home, he noticed that his wife was somewhat indifferent to his presence. He heard some gossip about her. Upon questioning her, she said that she had had some dates with appellant, "just hugging and kissing dates is all she had had with him." He then went to Olney to appellant's place of business and asked him about his association with appellee's wife. "Well sir I told him that I guess he knew what I was down there for and he said yes and I told him I wanted to find out about it what she had done or exactly what had happened, and everything, and he just pops right out he said 'Well no I haven't been to bed with your wife but about three or four times.'" During a later conversation, appellant said he had spent several weekends with her at a ranch near Megargle; that he twice had sexual relations with her at a motel in Wichita Falls; one such occasion was about the 6th of December, after appellee's return home from Indiana. When appellee told his wife what appellant had said to him, "She just admitted everything, she said that she was sorry that it happened but that that's the way it was and she admitted that she had had sexual relations with him on several occasions." She said that she had

spent all or a portion of the Friday night with him before appellee returned home on Saturday morning. "She said that she didn't feel after me knowing about it and everything had happened like that that we could make a go out of it from there on out. She said she would go to see a lawyer and apply for a divorce or file for a divorce." She left their home about the 23rd of December, 1955, filed for a divorce December 31, 1955, and the divorce was granted March 1, 1956. Appellee tried to persuade her not to get a divorce, and to continue to live with him, but she said "she didn't believe we could ever hit it off together again after what had happened."

Appellant seriously contends that appellee's testimony as to the statements of the wife to him was hearsay, and was inadmissible and highly prejudicial; and that if such evidence should be admissible under any exception to the hearsay rule, it would only be admissible to show the state of affection between the spouses, and not to prove the actual fact of any wrong alleged to have been committed by appellant. The question as to whether testimony of one spouse as to admissions made to him by the alienated spouse, involving conduct of the defendant, is admissible, and, if so, for what purposes, has been before the courts many times, without entire uniformity in the holdings.

It has been said that there are three elements in an action for alienation of affections, namely, the wrongful act, the loss, and the causal connection between the wrongful act and the loss. Wallace v. Wallace, 85 Mont. 492, 279 P. 374, 66 A. L.R. 587.

"The courts which hold such declarations admissible for any purpose usually lay stress on the fact that they are not admissible for the purpose of showing such (defendant's) guilt. * * * And probably all courts which hold such declarations admissible for any purpose would agree that they are admissible for the purpose of proving the third element. That is,

when defendant's misconduct has been shown, and it has also been shown that the husband and wife have separated or that plaintiff has lost the affections of the other spouse, such declarations are held admissible to show that the separation, or the loss of affection, was the effect of such misconduct, and not the effect of some other cause. * * * Some courts, however, seem to go beyond this, and hold that the declarations are admissible for the purpose of showing the 'state of affection between husband and wife;' 'the state of the wife's feelings toward her husband;' 'the condition of his mind in consequence of any influence exerted thereon;' 'the husband's feelings towards plaintiff;' or 'the mental state of the alienated spouse.' * * * The expressions quoted would seem to mean that the declarations are admissible to prove the loss of the affections of the other spouse as well as the cause of such loss; or, perhaps, to show the existence of affection prior to the alleged alienation." 4 A.L.R. at pages 505, 506.

"The inquiry here involves Newton's disposition toward, and his affection for appellee, and his declarations and conduct with reference to his parents' attitude toward appellee and Newton's relation toward and with appellee during the whole period. * * * What he said to appellee and to appellee's mother at Abilene and at Fort Worth as to his acts, and as to his parents' attitude toward appellee, were parts of the continuous things said and done, and res gestae. Some authorities and courts speak of such as original evidence." Jackson v. Jackson, 35 S.W.2d 830, 836.

"The court permitted plaintiff to testify to declarations made by her husband to her and others, which purport to give the offers and inducements held out to him by his parents to induce him to separate from and abandon the plaintiff. It is claimed that this was prejudicial error. This class of evidence has been held proper and competent as showing the influences producing

the alienation and the loss of affection complained of and the cause of separation and the destruction of the marital relation. (Citing cases.)" White v. White, 140 Wis. 538, 122 N.W. 1051, 1053, 133 Am.St.Rep. 1100.

In Pugsley v. Smyth, 98 Or. 448, 194 P. 686, 690, the court said: " * * * the general rule is that declarations of the deserting wife, though made in the absence of the defendant, are available as evidence in behalf of the injured husband to prove the state of the affections of the alienated wife, her motive, and the effect produced upon her mind by the conduct of the defendant, notwithstanding such declarations involve statements of acts done or words spoken by the defendant."

■ We have reached the conclusion that the testimony as to the wife's statements was admissible to show deterioration of the marital relations, as well as the cause of the deterioration.

■ Appellant was called to the witness stand and asked if he had sexual relations with the wife, at certain places and on certain dates. He declined to answer any of the questions on the ground that an answer might tend to incriminate him. The wife did not testify. Since no witness testified that appellant and the wife had had sexual relations, appellant contends that the case rested in the main on appellee's testimony as to what appellant and the wife had said; that appellee's credibility was an issue; and that he was allowed improperly to bolster his case by testifying to statements made by his wife. It was also bolstered by appellant's failure to rebut it. Smith v. Smith, Tex.Civ.App., 225 S.W.2d 1001. At most, the situation is merely that appellee was allowed to testify that his wife confirmed what appellant had previously told him, and which, on the trial, appellant refused to deny. In any event, we do not think the admission of the evidence complained of amounted to such a denial of appellant's rights as was reasonably calculated to cause or probably did cause the

rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure.

■ Another point is that it was error to admit evidence reflecting the reduced financial circumstances of appellee and his wife. There was some testimony by appellee, and some references in the letters, about their debts and difficulty in meeting their obligations and living expenses. There was evidence that they thought the wife should stay in Wichita Falls and work while appellee was in Indiana. Appellee said she agreed to this arrangement. They bought their house furnishings on the installment plan, and both paid on the debt out of their salaries. There was evidence that they wanted children but they wanted to postpone having them until their financial condition was improved. We think this evidence was admissible to show the state of their affection and their friendly and cooperative relations, and should not have been excluded on the objection that the financial condition of parties to suits of this nature cannot be considered in assessing damages.

Error is assigned to the submission of Issue No. 4, which inquired whether the wrongful acts or conduct of appellant "was a producing cause" of any substantial impairment of the elements of consortium. Appellant says that the issue placed a lighter burden on appellee than that required by law, in that before recovery may be had it must be established that the acts of appellant were "the controlling cause."

■ "The cause of action for alienation of affections lies against one whose wrongful conduct is the procuring or contributing, proximately contributing, controlling, actively inducing, or procuring cause that destroyed the affections, although other causes may have contributed thereto, * * *." 27 Am.Jur., p. 129, sec. 526.

"To render a person liable to one spouse for enticing away the other, he or she must have been the procuring or contributing

cause of the desertion, * * *." 13 R. C.L., p. 1464, sec. 513.

Plourd v. Jarvis, 99 Me. 161, 58 A. 774, holds that it is sufficient to show that the defendant's conduct was a contributing cause.

In Sullivan v. Valiquette, 66 Colo. 170, 180 P. 91, it is said that it is sufficient to show that the defendant's conduct was the procuring or a contributing cause.

In Rhodes v. Meloy, Tex.Civ.App., 289 S.W. 159, 164, the court said: "We are unwilling to adopt the rule that defendant's conduct must be the sole cause, but we think that the rule that defendant must be the controlling cause of the alienation is a sound one."

In McQuarters v. Ducote, Tex.Civ.App., 234 S.W.2d 433, it is said that the defendant's conduct must be the active and controlling cause.

There is no evidence suggesting that any cause operated in this case except the acts of appellant. And in the instructions the court told the jury: "Producing Cause, as that term is used in this charge, means that cause which produces a result, without which such result would not have occurred, and which result could have been reasonably foreseen by a person of ordinary prudence. There may be more than one producing cause." This instruction is in line with the following from Place v. Searle, 101 L.J.K.B.N.S. (Eng.) 467–C.A., quoted in 108 A.L.R. at page 428: " 'The test of liability is whether something has been done which but for defendant's interference would not have been done.' "

 We do not believe that reversible error is shown in connection with the submission of Issue No. 4.

There are several points of error relating to the argument of appellee's counsel. We do not extend this opinion to set out the argument complained of. Appellant characterizes it as being "vilification and vituperation." It is true that the argument was

vehement. But one would not expect to hear from counsel for appellee any paeans of praise for appellant's conduct. It has not yet been held that counsel should so restrain himself in argument that a chance listener would have difficulty in determining which side he is on. 41–B Tex.Jur., p. 316, sec. 264. We think the remarks objected to were legitimate inferences from the testimony. And the size of the verdict does not indicate that the jury was motivated by prejudice.

There are other points which we do not discuss; but we have considered them all and do not believe that reversible error is reflected.

The judgment is affirmed.