**Daniel I. FELSENTHAL, Petitioner,**

v.

**Billy Wayne McMILLAN, Respondent.**

**No. B–3485.**

Supreme Court of Texas.

March 28, 1973.

Rehearing Denied May 23, 1973.

Smead, Roberts, Harbour, Smith, Harris & French, Jerry S. Harris, Longview, for petitioner.

Badders & Keeling, C. A. Keeling, Nacogdoches, for respondent.

GREENHILL, Chief Justice.

This action was brought by a husband for alienation of affections and for criminal conversation because of alleged acts of sexual intercourse between the husband's wife and the defendant. The facts are set out in the opinion of the court of civil appeals. 482 S.W.2d 9. The trial court entered summary judgment for the defendant. The court of civil appeals, noting that there had been no alienation of the affections of the husband or wife as shown in their depositions, nevertheless held that the trial court erred in granting a summary judgment as to the cause of action for criminal conversation. We affirm.

The court of civil appeals correctly held that the tort of criminal conversation is part of the common law adopted by this state in Article 1 of the Texas statutes.[1] That such tort was a part of the common law of England and as declared by the several states is set out in 1 Harper & James on Torts (1956) 609 et seq.; Restatement of Torts, Section 685; Prosser, Law of Torts (4th ed. 1971) 876 and 887; and 41 Am.Jur.2d 402 et seq.; and other authorities.

■ At common law, only the husband could bring the action. Because of equal rights statutes and because of a recognition of rights of equal protection, the wife also has been held to be able to maintain the action in all states where the matter has arisen. That matter is not before us, but we could not live with the action on any other basis. If the husband partakes of this con-

---

1. The article is also article 1 of Vernon's Annotated Civil Statutes. As to what common law was adopted in Texas see: Great Southern Life Ins. Co. v. City of Austin, 112 Tex. 1, 243 S.W. 778 (1922); Grigsby v. Reib, 105 Tex. 597, 153 S.W. 1124 (1913).

versation, the wife's interests are equally infringed and her rights to legal redress must be the same. This suggests the possibility of an aggrieved husband suing a conversing husband of an aggrieved wife who also sues the conversing wife of the aggrieved husband. It is an unsavory picture. Such a suit is not a pleasant one in any context. Perhaps that is why we so seldom see a suit of this nature and perhaps the aggrieved spouse should not expect to recover anything but nominal damages in the case where the besmirched spouse has participated willingly.

■ Nevertheless, the petition alleges a wrong and a harm. The aggrieved spouse is surely injured whether or not the affections of the conversing spouse have been alienated. And it may be noted that rape is included in the tort of criminal conversation. Restatement of Torts, Section 685, comments b and c; and the mental anguish and other injuries to the offended spouse may be quite real.

We have found no court which has abolished the tort or refused to recognize it as part of the common law, and we decline to do so. If the Legislature, which is now in session, desires to act in the matter, that, of course, is its prerogative.

■ The Legislatures of 10 or 12 states have enacted "Heart Balm" statutes to abolish the torts of alienation of affections, criminal conversation and breach of promise to marry, or one or more of such torts.[2] Most of those legislative acts appear to have abolished the tort of criminal conversation. But no such action has been taken by the Texas Legislature. Such a statute was considered in 1935, but it failed to pass. See House Journal (1935) pages 1929–30.

The judgment of the court of civil appeals is affirmed.

Dissenting opinion by STEAKLEY, J., in which WALKER, POPE and DENTON, JJ., join.

STEAKLEY, Justice (dissenting).

The question here is whether the tort arising out of the offense known as criminal conversation will be recognized as actionable in Texas. I would not do so. I do not regard of particular significance whether or not we now have this right of action in Texas by adoption of the common law, as the majority says. If we have, I would abolish it.

We should recognize the offense of criminal conversation for what it is. The term "criminal conversation," in its general and comprehensive sense, is synonymous with "adultery"; but in its more limited and technical signification it may be defined as adultery in the aspect of a tort. Turner v. Heavrin, 182 Ky. 65, 206 S.W. 23, 4 A.L.R. 562 (1918); Gibson v. Gibson, 240 Ark. 827, 402 S.W.2d 647, 650 (1966); Hirschy v. Coodley, 116 C.A.2d 102, 253 P.2d 93 (1953); Rheudasil v. Clower, 197 Tenn. 27, 270 S.W.2d 345, 346, 46 A.L.R.2d 1083 (1954).

We are not concerned here with rape or with any other form of assault or battery. The wife, and in some cases the husband, undoubtedly has a right of action to recover for any injuries and harm resulting from the forcible invasion of her person. She would also have a cause of action where her consent to sexual intercourse was obtained by duress or fraud.

We are not concerned with the tort known as alienation of affections. This

2. Prosser, Laws of Torts (4th ed. 1971) at page 887. A basis for such statutes is that "Heart Balm" lawsuits may be more useful for blackmail purposes than to preserve and protect marriages and the rights of the spouses. Comment, Piracy on the Matrimonial Seas—The Law and the Marital Interloper, 25 Southwestern Law Journal 594 (1971); Feinsinger, Legislative Attack on "Heart Balm," 33 Mich. L.R. 979 (1935); Casenote, 22 Va.L.Rev. 205 (1935). The writer's unwillingness to extend the application of causes of action of this nature is set out in the dissent in Kelsey-Seybold Clinic v. Maclay, 466 S.W.2d 716 (Tex.1971) at 720.

right of action arises when the wrongdoer, who knows that the wife is married, intentionally sets out to and does divert her affections from her husband. See Restatement, Torts, § 683. We recognized the right to recover for alienation of affections in Kelsey-Seybold Clinic v. Maclay, 466 S.W.2d 716 (Tex.1971), and should continue to do so. We are not concerned with the right of action that accrues when the wrongdoer, for the purpose of disrupting the marriage relation, induces a wife to separate from her husband or not to return to him after she has separated from him. See Restatement, Torts, § 684.

Plaintiff, Billy Wayne McMillan, and his wife, Mary Ann McMillan, were proprietors of a small bar in Longview, Texas. It was common practice for Mrs. McMillan to run the establishment alone while her husband conducted other business activities. On the night of February 25, 1971, Danny Felsenthal and a small group of other customers walked outside with Mrs. McMillan when she closed the bar at midnight. After a brief gathering outside the bar, the group disbanded and Felsenthal asked Mrs. McMillan to take a ride in his car. She did so and they went to a lake house where they stayed until early morning. Mrs. McMillan testified they had a drink and then had sexual intercourse. Felsenthal testified that drinking was their only joint activity. The episode became known to McMillan and he sued Felsenthal. He alleged that Felsenthal had alienated the affections of Mrs. McMillan and that he had committed a trespass on McMillan's right to exclusive sexual relationship with his wife.

The trial court granted Felsenthal's motion for summary judgment grounded on the deposition testimony of the principals involved. Mrs. McMillan said in her deposition that she still loves her husband and wishes to stay with him. In his deposition, McMillan expressed satisfaction that the meeting of his wife with Felsenthal was unplanned, and that his wife's affections were not alienated.

The Court of Civil Appeals concluded that an action for alienation of affections would not lie under these facts; but that McMillan's pleadings, together with the deposition evidence, were sufficient to support a cause of action for criminal conversation. The case was reversed and remanded for trial of this. 482 S.W.2d 9.

Our question, then, is whether a husband is entitled to recover from one with whom the wife has willingly had sexual relations and where the husband sustains no further loss. The marriage is intact. The wife's affection for her husband has not been diminished or diverted. At common law and in other jurisdictions where a cause of action is recognized in favor of the husband under these circumstances, consent of the wife is no defense. The fact that the wrongdoer did not know the wife was married but believed her to be single is not a defense. The fact that the wife represented herself as single is not a defense. The fact that the wife was the aggressor is not a defense. The fact that she has been neglected or mistreated by her husband is not a defense. The fact that she and her husband were separated through his fault is not a defense. When the case comes on for trial, moreover, the number of occasions on which the wife has had sexual relations with the defendant and with others is a highly relevant inquiry on the issue of damages.

In my opinion the cause of action just described has no place in our legal system. While the innocent spouse as well as the marriage suffer from an act of infidelity, an award of damages will neither alleviate emotional distress nor strengthen marital ties. Adultery is wrong and should not be condoned, but it is only rarely, if ever, that the existence of a civil remedy for damages will constitute an effective deterrent. After the event, any effort by the husband to recover damages from the wrongdoer, whether successful or unsuccessful, whether undertaken covertly or in open court, could endanger, and certainly will not serve

to sustain or restore, the marriage. And a contested trial will almost certainly destroy any chance the spouses might otherwise have to reestablish a meaningful marital relationship. It seems to me, therefore, that recognition of the cause of action will do more harm than good, and I am unable to justify a rule of law that automatically entitles the husband to money compensation in every case where his wife has, without his consent, had sexual relations with another.

This Court has not had prior occasion to consider this cause of action and the writ was granted that we might do so. A casual reference to the action is found in McGowen v. Bush, 17 Tex. 196 (1856) in a suit on a promissory note. A similar reference is found in G. H. & S. A. R. R. v. Freeman, 57 Tex. 156 (1882) involving the question of the assignability of a claim for damages against the railroad for injuring and killing livestock. A fair reading of Lisle v. Lynch, 318 S.W.2d 763 (Tex.Civ.App.1958, writ ref'd n. r. e.) will disclose that the court was speaking of a cause of action for alienation of affections. Swearingen v. Bray, 157 S.W. 953 (Tex.Civ.App.1913, no writ) did not reach this Court; the opinion states, however, "[t]here is a dearth of decisions in this state upon cases growing out of criminal conversation, and we are not able to find any authorities in the reports of Texas upon the question; . . ."

The action is a relic of the common law. For a history of the tort, see Schoonover, Piracy on the Matrimonial Seas—The Law and the Marital Interloper, 25 Sw.L.J. 594 (1971); Payne, Tortious Invasion of the Right of Marital Consortium, 8 Journal of Family Law 41 (1968); and Notes, 22 Va. L.Rev. 205 (1935).

Those who question the right of action recognize it as a fertile field for blackmail and extortion by means of manufactured suits in which the threat of publicity is used to force a settlement. It has been abolished as an actionable tort by the legislatures of many states. See Feinsinger, Legislative Attack on "Heart Balm," 33 Mich.L.Rev. 979 (1935). The reasons for this are well stated by the author in 8 Journal of Family Law 41, *supra:*

"The common law action for criminal conversation and the statutory right of action for damages in respect to adultery ought to be abolished. These rights of action seem better calculated to inflict pain upon innocent members of the families of the parties than to secure redress to an aggrieved spouse. The most significant characteristic of these rights of action is the act of adultery. The fact of sexual misconduct tends to arouse moral indignation which frequently results in damages being awarded not by way of compensation nor proven loss but rather as punishment of the adulterer. Although lip service is generally paid to the principle that damages must be compensatory and not punitive, the right to award damages for loss of intangible benefits such as affection and family honour facilitates the award of vindictive damages. It is further submitted that there is no good reason for allowing an action for damages in respect to adultery in circumstances where the invasion of the husband's sexual monopoly is unaccompanied by loss of his wife's affection, society or services. In other words, if the marriage continues as a going concern notwithstanding the commission of adultery by the wife, there is no justification for allowing any action for damages against the adulterer. On the other hand, where the adultery is accompanied by loss of the wife's affection, society or services, an adequate remedy will be available to the husband in an action alleging unjustified invasion of the right of marital consortium, . . ."

In my view, it is unquestionably true that family relations will be better served today without a right of action in criminal conversation by either marriage partner. Allegations by public suit, and proof at public trial, that one's spouse has been unfaithful are not calculated to strengthen family ties,

or to preserve an existing marriage, or to right an acknowledged wrong. There is the ever-present likelihood that scurrilous and sensational allegations will be threatened or utilized for bargaining purposes. And the folly of this tort as somehow protecting the family would be the more manifest here had Mrs. Felsenthal intervened by suit against Mrs. McMillan, likewise for criminal conversation.

I would therefore disavow a right of action in criminal conversation by either spouse under any circumstances, here and now. And so I would reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

WALKER, POPE and DENTON, JJ., join in this dissent.