**Marguerite SCANLON, Appellant,**

v.

**W. R. (Billy Bob) CRIM, Appellee.**

**No. 18139.**

Court of Civil Appeals of Texas, Dallas.

Oct. 4, 1973.

Rehearing Denied Oct. 25, 1973.

William R. Eddleman, Carp & Eddleman, Dallas, for appellant.

Earl Luna, Dallas, for appellee.

BATEMAN, Justice.

This is a breach of promise case. The appellant was plaintiff in the trial court and appeals from an adverse summary judgment. Appellant alleged that she and appellee became engaged to marry each other in 1965, that this agreement was confirmed by appellee numerous times until in April, 1970, when he breached it by informing appellant he would not marry her. He married another woman the next month. We need not recite in greater detail the allegations in support of her claim for substantial damages.

Appellee alleged *inter alia* that by the adoption on November 7, 1972 of an amendment to the Constitution of Texas the public policy of the state was changed to the extent that the common law cause of action for breach of promise was abol-ished. The amendment, which became Section 3a of Article I, is as follows:

> "Equality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin. This amendment is self-operative."

The trial court rendered summary judgment that appellant take nothing on the sole ground that "as a matter of law, no cause of action exists because same would discriminate against sex of a party as prohibited by" said amendment. Appellee argues, in support of the trial court's ruling, that under "the present state of mores in American life" a man has no right to sue a woman for breach of promise and that this closing of the courthouse door to him while leaving it open to women was a discrimination which the amendment removed by closing the courthouse door also to women.

Appellant attacks this ruling on several grounds but we find it necessary to discuss only one; i. e., that the trial court has misinterpreted the amendment and has given it an effect never contemplated by the legislators who proposed it or by the voters who adopted it. We agree with this contention.

Our determination of the parties' legal rights cannot be controlled by the practical difficulty a male plaintiff may have in persuading a jury to award damages to him for this kind of wrong. Although we know of no such case in which a male plaintiff has prevailed, we cannot assume that a jury would be disposed to violate its oath and disregard the evidence in rendering its verdict. Nor can we say as a matter of law that a recovery by a man for breach of promise of marriage would now be forbidden by public mores in view of current sentiment against discrimination based on sex, which has recently led to numerous changes in the law, including the equal rights amendment.

We know of nothing in Texas law to prohibit a suit by a man for dam-

ages for breach of promise of marriage. Wells v. Hardy, 21 Tex.Civ.App. 454, 51 S.W. 503 (Austin 1899, writ ref'd), was a case in which a male sued a female for damages for her breach of promise to marry him. His petition described her as being only 18 years of age, and the trial court sustained a special exception on the ground that because of her minority she was not bound by her contract. This was affirmed and the Supreme Court refused writ of error. None of the three courts said that the man had no cause of action because of his sex. We, therefore, do not agree with appellee that a male plaintiff has no right to maintain such a suit. Neither do we agree that the said constitutional amendment destroyed the right of a woman to do so. It is just as reasonable to say that it removed discrimination by recognizing the right of both men and women to bring such suits.

In Felsenthal v. McMillan, 493 S.W.2d 729 (Tex.Sup.1973), the question was whether Texas should continue to recognize a husband's right of action for criminal conversation and, speaking through Chief Justice Greenhill, the court said:

> "At common law, only the husband could bring the action. Because of equal rights statutes and because of a recognition of rights of equal protection, the wife also has been held to be able to maintain the action in all states where the matter has arisen. * * * we could not live with the action on any other basis."

As was also pointed out in that opinion, the legislatures of a number of other states have specifically abolished causes of action for alienation of affections, criminal conversation and breach of promise to marry, or one or more of them, but the Texas Legislature has not seen fit to do so. Such suits have been severely criticized by numerous law writers.*

While the Supreme Court did not see fit in *Felsenthal* to abolish the cause of action for criminal conversation, the four dissenting members of the court were in favor of doing so. The court, in Kelsey-Seybold Clinic v. Maclay, 466 S.W.2d 716 (Tex. Sup.1971), recognized the validity of a cause of action for alienation of affections, although this decision was also by a divided court. In the present state of the law in Texas, therefore, we are compelled to hold that appellant has alleged a valid cause of action as against the contention that the right of action was abolished by the adoption of the said constitutional amendment.

We need not consider or pass upon appellant's other points, raising constitutional objections to the claimed effect of the amendment.

■ Appellee also contends the summary judgment was proper because according to appellant's own pleadings her cause of action accrued more than a year prior to the filing of suit and was barred by the one year-statute of limitation, Tex.Rev. Civ.Stat.Ann. art. 5524 (Vernon 1958). She alleged that the first agreement to marry was made in 1965, without setting a date for the ceremony, and was breached by appellee in April 1970. The suit was filed in May 1970. Appellee argues that as a matter of law "a reasonable date of such alleged marriage would have been much less than five years." However, appellant alleged, and offered summary judgment proof by her affidavit, that the agreement was renewed by the parties and "constantly" affirmed by appellee, who planned with

---

* Prosser, Law of Torts 887 (4th Ed.1971); Feinsinger, Legislative Attack on "Heart Balm," 33 Mich.L.Rev. 979 (1935); Feinsinger, Current Legislation Affecting Breach of Promise to Marry, Alienation of Affections and Related Actions, 10 Wis.L.Rev. 417 (1935); Kingsley, The Anti-Heart Balm Statute, 13 So.Cal.L.Rev. 37 (1939); Wright, The Action for Breach of the Marriage Promise, 10 Va.L.Rev. 361 (1924); Brown, Breach of Promise Suits, 77 U.Penn.L.Rev. 474 (1929); Brockelbank, The Nature of a Promise to Marry—A Study in Comparative Law (II), 41 Ill.L.Rev. 199 (1946).

her a honeymoon in 1970 a few weeks before his breach of the agreement. We hold that this raised a fact issue upon the resolution of which the validity of the plea of limitation would depend. The summary judgment cannot be sustained on the ground that the suit was barred by limitation.

The judgment is reversed and the case remanded for trial.