Patsy Taylor **GREENWAY**, Appellant,

v.

Constance E. **GREENWAY**, Appellee.

No. C14–84–602–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 18, 1985.

---

Stephen A. Doggett, Richmond, for appellant.

Mark Vela, Vela & Prashner, Houston, for appellee.

Before JUNELL, MURPHY and SEARS, JJ.

## OPINION

JUNELL, Justice.

Patsy Taylor Greenway, plaintiff below, appeals a summary judgment granted in favor of the defendant below, Constance E. Greenway, in an alienation of affections suit. The single point of error is that the trial court erred in granting the summary judgment because a fact issue was raised by the plaintiff. We reverse and remand.

Patsy Greenway's petition alleges that she and J. Milton Greenway were married and lived together as husband and wife until Constance Greenway intentionally pursued a course of conduct that led Milton Greenway to transfer his affection to Constance, alienated his affections toward Patsy and caused the ruin of their marriage. Patsy Greenway also alleged $500,000 in actual damages and sought $500,000 in punitive damages.

The motion for summary judgment and the judgment itself indicate that the court considered depositions of Patsy Greenway and Constance Greenway, one affidavit from J. Milton Greenway, one affidavit from Greg Greenway, Patsy and Milton's son, and three affidavits of Patsy Greenway. The record on appeal originally contained only the affidavits. We granted appellant leave to supplement the record with the two depositions, which are now before us.

Appellee contends that she is entitled to summary judgment as a matter of law because her summary judgment proof established that J. Milton Greenway did not "become involved" with Constance until after all affection for Patsy had died and he had already moved out of the marital home. J. Milton's affidavit states as much. Constance Greenway's deposition testimony is that she did not date Milton until he was separated from his wife. Still, we cannot affirm the summary judgment because the appellant's affidavits do present some facts and raise inferences contrary to appellee's proof.

We have reached this decision with some difficulty because appellant's affidavits contain many statements that are not competent summary judgment proof because they are either hearsay, conclusions or obviously not made from personal knowledge. We do glean from the affidavits the following facts that would be admissible at trial and do raise a fact issue.

Patsy Greenway's affidavits allege that her marriage with Milton was on the whole harmonious, happy and satisfying until he moved himself and furnishings from their home the week of June 15, 1980. Until the breakup of the marriage, there

had been nothing in Milton's actions to lead her to believe the relationship was not one of a normal loving couple. In July 1980 Milton Greenway showed her a picture of Constance and told her that "sex with Connie was exciting" and that he wanted to marry her. Prior to the time her divorce became final on October 20, 1980, Milton Greenway told Patsy that he had bought Constance a necklace. These statements by Milton to his estranged wife would be admissible at least to show that his affections were indeed alienated from Patsy and had been turned to Constance before the divorce became final. *Lisle v. Lynch,* 318 S.W.2d 763, 766–67 (Tex.Civ.App.—Fort Worth 1958, writ ref'd n.r.e.). Under the common law of many states it is not a defense that the defendant accused of alienating a spouse did not have relations with that spouse until after the plaintiff's marriage was in trouble. *See* Annot., 19 A.L.R.2d 471, 496–500 (1951); *Peters v. Pursley,* 278 S.W. 229 (Tex.Civ.App.—Amarillo 1925, no writ).

■ Greg Greenway's affidavit stated that when his father left home he told Greg first that he would be staying in a motel and then with friends. Greg followed his father June 17, 1980, to Constance Greenway's home. Later, Milton told Greg that he had rented an apartment. Greg visited that apartment three times between 11 p.m. and 1 a.m. but no one was home. A reasonable inference that arises from affidavits, combined with the fact that Milton married Constance one month and a day after his divorce was final, is that Milton Greenway was "involved" with Constance Greenway prior to leaving his wife.

■ In deciding whether there is a disputed material fact issue precluding summary judgment, we must take as true evidence favorable to the non-movant. Every reasonable inference from the evidence must be indulged in favor of the non-movant and any doubts resolved in her favor. *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984). Applying these rules, we must reverse the trial court and remand for further proceedings.

SEARS, Justice, dissenting.

I respectfully dissent from the majority opinion.

The evidence offered by Appellant in opposition to Appellee's Motion for Summary Judgment consists of affidavits of Appellant and her son and depositions of Appellant and Appellee.

Appellant's affidavits do not comply with Tex.R.Civ.P. 166–A(e) which requires that "[O]pposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Appellant's affidavits do not show that they were made on personal knowledge and they do not set forth admissible facts, but instead consist of conclusions and hearsay. For this reason, they are insufficient and we must assume that the judgment of the trial court is correct.

The rule is clear that affidavits must be based on personal knowledge and not on hearsay. *Jackson T. Fulgham Co. v. Stewart Title Guaranty Co.,* 649 S.W.2d 128 (Tex.App.—Dallas 1983, writ ref'd n.r.e.); *Wells Fargo Construction Co. v. Bank of Woodlake,* 645 S.W.2d 913 (Tex. App.—Tyler 1983, no writ); *City of San Antonio's Firemen's and Policemen's Civil Service Commission v. Villanueva,* 630 S.W.2d 661 (Tex.App.—San Antonio 1981, no writ).

Appellant's affidavits are full of conclusions about facts that if true could easily have been proven by physical evidence. The affidavits are therefore insufficient for their failure to set forth facts instead of conclusions. *Hidalgo v. Surety Savings & Loan Association,* 462 S.W.2d 540 (Tex. 1971); *Manges v. Astra Bar, Inc.,* 596 S.W.2d 605 (Tex.Civ.App.—Corpus Christi 1980, no writ); *Inwood Forest Community Improvement Association v. R.J.S. Development Co.,* 630 S.W.2d 751 (Tex.App.—Houston [1st Dist.] 1982, no writ). Other opinions holding that affidavits may not be based on hearsay are *A & S Electrical Contractors, Inc. v. Fischer,* 622 S.W.2d

601 (Tex.App.—Tyler 1981, no writ); and *Stotler v. Fetzer,* 630 S.W.2d 782 (Tex.App. —Houston [1st Dist.] 1982, writ dism'd).

The affidavits of Appellant have not been prepared in compliance with Rule 166–A(e). Although the majority opinion claims that the affidavits of Appellant raise some facts and raise inferences contrary to Appellee's proof, I do not believe there are any facts sufficient to overcome Appellee's summary judgment, nor do I believe that this court should deal in "inferences" that "may" be raised from the affidavits. The law is clear that if the controverting affidavits do not set forth sufficient *evidence* in response to a motion for summary judgment, then the granting of the summary judgment is proper. *"Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934 (Tex.1972); *Stevenson v. Reese,* 593 S.W.2d 828 (Tex. Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.).

The majority opinion concedes that it reached its decision with difficulty because Appellant's affidavits contained statements that are not competent summary judgment proof in that they are hearsay, conclusions and obviously not made from personal knowledge. However, the majority opinion goes on to say that it does *glean* facts that would be admissible at trial. It is my belief that those "gleaned facts" are insufficient to rebut the summary judgment evidence.

A review of the depositions supports the trial court's judgment. Appellant testified that she did not know why her husband separated from her. The only knowledge she had of what was going on was what her husband told her, and this knowledge was of facts that occurred *after* the separation of the parties. As to the relationship that existed between her ex-husband and the Appellee, Appellant testified that she did not know who initiated the relationship. She was asked specifically whether or not her husband had persuaded Appellee to have intercourse with him, or whether Appellee had persuaded him to enter into a relationship with her, and Appellant answered, "Well, I wouldn't have any way of knowing that." In response to all of the questions regarding the allegations in Plaintiff's original petition that the Appellee pursued a course of conduct to persuade Milton Greenway to engage in sexual intercourse with her, the Appellant had no proof whatsoever to support the allegations.

In answer to questions concerning other allegations in Plaintiff's original petition, the Appellant was unable to offer any proof to support the allegations that the Appellee was avaricious and materialistic, and again answered that the only knowledge that she had was what she had been told by her husband of events that occurred after the separation of the parties. She was asked the following questions: "You know for a fact that [Constance E. Greenway] influenced your husband to leave you and break up the marriage?" and Appellant answered, "No." When asked who initiated the relationship, and how the relationship came into being, her answer to both questions was that she did not know. She was asked what evidence she had to support her allegations of malicious actions on the part of Appellee, and she answered, "Well, she married him." She was asked if that was the extent of evidence that she had to support her allegations and the answer was she "did not know what else to say." Her original petition also contained allegations of criminal conversations and unlawful sexual intercourse, and when asked what these criminal allegations meant she answered that she did not know, and that her attorney had never explained them to her. She was further asked how she arrived at damages in the amount of $250,000 for humiliation and disgrace, $250,000 for deprivation of husband's services, and $500,000 because of Appellee's wrongful and malicious acts. Appellant could not substantiate any of the aforesaid damages and merely said that her attorney had put down those figures and she relied upon her attorney's expertise. Finally, her deposition culminated with the following questions and answers:

Q. What are the dates that your husband told you this relationship began?

A. I don't remember when it was—the summer he left—

Q. But you don't remember when any of those times were?

A. No.

Appellant further alleges in her deposition that her daughter has proof of the allegations in her original petition. However, there is no evidence, depositions or affidavits offered to the court in support of any proof of evidence that can be offered by Appellant's daughter. Milton Greenway's conversations with Appellant are hearsay as to Appellee, and they cannot form the basis of evidence and facts sufficient to overcome Appellee's Motion for Summary Judgment. Appellant cites *Lisle v. Lynch*, 318 S.W.2d 763 (Tex.Civ.App.—Ft. Worth 1958, writ ref'd n.r.e.), for the proposition that the admissions of the alienating spouse are admissible to show his or her mental attitude. However, in that case both the spouse and her paramour admitted a sexual relationship during the marriage, therefore the hearsay was not used as proof of the truth of the statements made or as the sole evidence to support the cause of action.

The deposition of Appellee and the affidavit of Milton Greenway contradict and refute all of the allegations of Appellant. Appellant's deposition and the affidavits are full of hearsay, conclusions and allegations, and are totally void of facts or proof of any of Appellant's allegations. The judgment of the trial court should be affirmed.