**CONTINENTAL OIL COMPANY, a Delaware Corporation, Plaintiff in Error,**

v.

**Howard F. RYAN, Defendant in Error.**

**No. 39449.**

Supreme Court of Oklahoma.

Oct. 15, 1963.

Rehearing Denied Jan. 21, 1964.

Application for Leave to File Second Petition for Rehearing Denied June 2, 1964.

494

Looney, Watts, Looney, Nichols & Johnson, Oklahoma City, for plaintiff in error.

B. H. Carey, Eugene Mathews, Oklahoma City, for defendant in error.

DAVISON, Justice.

This is an appeal by Continental Oil Company (defendant below) from a judgment on jury verdict in favor of Howard F. Ryan (plaintiff below) for damages resulting from personal injuries sustained by plaintiff while working in a service station as an employee of the lessee operator of such service station. The parties will be referred to by name or by their trial court designation.

Plaintiff was injured on December 19, 1958, when he stood at the rear of the grease room and by hand signals was guiding a customer (Harry Dumbauld) in driving his (Dumbauld's) car upon boards installed on each side of the hydraulic grease lift or hoist, and positioning the car over the hoist, preliminary to raising the car for a grease job. The customer, Dumbauld, either by failure to gauge the speed or inability to stop the car, drove the car against plaintiff, pushing plaintiff against cabinets at the rear of the grease room and crushing his legs. Plaintiff sued Continental and Dumbauld. The jury returned a verdict only against Continental and found in favor of Dumbauld.

The service station and premises had for a number of years been leased by the owners thereof to the defendant Continental and had, at the pertinent time, been subleased by said defendant to one Herman Casler, who employed plaintiff to perform services in the operation of the service station. The initial written lease to Casler was for a term of one year, expiring November 1, 1958, and was extended by letter from Continental in October, 1958, on a month to month basis to April 1, 1959, under the same terms as provided in the written lease. The rental paid by Casler was $1\frac{1}{4}$ cents per gallon of gasoline and motor fuel delivered into the station storage tanks.

The substance of plaintiff's action against Continental is that it was negligent in making certain alterations or improvements to the grease room which created an unsafe or dangerous condition and that this joined and combined with the negligence of Dumbauld caused the injuries to plaintiff.

There is little if any dispute as to the physical situation and the acts of Continental. The grease room was originally 13 feet wide and 24 feet long with a hoist installed in about the center of the room, so that when a car was driven over the hoist two parallel steel beams came up against the bottom of the car and the car was raised so that the wheels hung free. It was necessary to properly position the car over the hoist. In 1954 or 1955, prior to the sublease to Casler, Continental installed cabinets across the rear of the grease room. These cabinets were about 3 feet high and $1\frac{1}{2}$ foot deep and left 3.7 feet of clear space between the cabinet and the end of the hoist beams. In the summer of 1958 Continental installed and attached to the concrete floor a 2″ x 12″ board, 16 feet long, on each side of the hoist so that the car tires would roll upon the boards and the cars would clear the hoist beams. This was done at the request of Casler in order that the hoist would accommodate the newer lower cars. The top of the approach ends of the boards were $2\frac{3}{4}$ inches above the concrete floor and the top edges of said ends were beveled. No stops were placed or fixed at or near the other end of the boards to keep the car from rolling to or off the ends of the boards. These physical conditions existed for the approximate 5

months period to the date of plaintiff's injury on December 19, 1958. It was shown that plaintiff worked in the station during all of the above mentioned times.

There was testimony that from experience and observation it was found that more momentum or engine power was required to drive a car upon the boards than was needed before the boards were installed.

It was testified that some customers drove their cars into the grease room and over the hoist and were guided by hand signals of a station attendant standing in front of the car. The defendant Dumbauld had previously used the station grease service but not since the installation of the boards. On the date of the accident, Dumbauld, being about 85 years of age, in response to plaintiff's signals drove his car's front wheels upon the boards, but the car halted when the rear wheels met the board ends. Dumbauld then accelerated the motor and the car "jumped" forward and struck plaintiff. There is evidence that Dumbauld became confused since the car struck plaintiff a second time.

Continental contends that because of the legal consequences arising from the lessor-lessee relationship of Continental and Casler, it is not liable to plaintiff, who was Casler's employee.

■ Continental relies upon the general proposition that ordinarily a tenant of premises, not intended for public purposes, take the premises in whatever condition they may be in, assuming all risk of personal injury from defects therein, and that employees of the tenant have no greater rights than the tenant has against the landlord, as more fully expressed in the cited cases of Godbey v. Barton, 184 Okl. 237, 86 P.2d 621 and Price v. MacThwaite Oil & Gas Co., 177 Okl. 495, 61 P.2d 177, and other decisions of this Court.

■ It is our conclusion that the more applicable rules of law governing the liability of Continental, if any, are those relative to the duties and obligations of a lessor who makes repairs or improvements upon the leased property during the tenancy. The installation of the boards was made by Continental during the tenancy of Casler. It was the position of plaintiff that such installation and the failure to provide stops was negligence in that it created an unsafe condition and was a factor that caused the injuries to plaintiff.

In Crane Co. v. Sears, 168 Okl. 603, 35 P.2d 916, 920, we stated:

"Where a landlord undertakes to make repairs, he is liable for injuries resulting from the negligence of himself or his servants in making such repairs. * * *",

and also quoted with approval as follows:

" 'This liability of the landlord in such cases is not limited to the tenant personally, but includes all persons who, within the contemplation of the parties, were to use the premises under the lease. * * * The same rule applies to the negligence of the landlord in making of improvements, and he will be liable for any injuries resulting from the unsafe condition of the premises, after the making of same.' "

See also 52 C.J.S. Landlord and Tenant § 417 c. (1), pp. 41, 42, and 32 Am.Jur., Landlord and Tenant, Sec. 678, p. 547.

■ The landlord's liability for negligence in making repairs or improvements extends to those made pursuant to an obligation imposed by a covenant (Crane Co. v. Sears, supra) and those voluntarily made (Buck v. Miller, 198 Okl. 617, 181 P.2d 264 and Horton v. Early, 39 Okl. 99, 134 P. 436, 47 L.R.A.,N.S., 314).

■ It therefore appears that under the above legal principles there was sufficient lawful basis for plaintiff's charge that Continental would be liable upon a showing of negligence in the making of the repairs or improvements. The issue of negligence was a matter of proof and, of course, was a question of fact for the jury to determine. The jury, in returning a verdict for plaintiff, necessarily found that

Continental was negligent in the installation of the boards.

In connection with its first proposition, regarding tenant taking premises in whatever condition they may be in and tenant's employee having no greater rights against the landlord, Continental argues that the defects or unsafe condition because of the installation of the boards were open and obvious and that plaintiff knew or should have known of such defects. Under our view of the applicable law this argument is in substance that plaintiff in working in the grease room and in standing in front of the car was guilty of contributory negligence. The answer of Continental set forth such plea.

■ The question of plaintiff's contributory negligence was presented to the jury by the court's instructions. Article 23, Section 6 of the Oklahoma Constitution provides that the defense of contributory negligence shall be a question of fact and at all times be left to the jury. In Wright v. Erwin, Okl., 346 P.2d 187, we stated:

"In view of constitutional provision making contributory negligence a question of fact for jury, if there is any evidence of contributory negligence or from which contributory negligence may be inferred or presumed, issue must be left to jury, and if there be sufficient evidence to require question to be submitted, verdict is conclusive. O.S.1951, Const. Art. 23, Sec. 6."

It is our conclusion that the verdict of the jury determines this question contrary to Continental's contention.

Continental further contends that the right of recovery for injuries resulting from landlord's negligence in making improvements or repairs to property pertains only to occupying tenant and his employees and not to subsequent tenant or his employees.

The substance of this proposition is that plaintiff's injuries occurred during a lease term subsequent to the leases during which the repairs or improvements were made, and that the beginning of the alleged new and later lease or rental agreement between Continental and Casler would reestablish a period of non-liability, as to Continental, for injuries arising from defects in the station existing at the time the later lease began to run. This is in essence an attempt to apply Continental's first proposition to the situation as analyzed by it.

The cabinets were installed long prior to any lease with Casler. However, the installation of the boards without stops was made during the lease with Casler that would have terminated November 1, 1958. This lease provided that should Casler remain in possession after expiration of the lease term and pay rent, without written agreement as to such possession, then Casler would be a tenant from month to month at the specified rental "subject to the covenants and conditions herein." As stated, in October, 1958, Continental wrote Casler that in accordance with the provisions of the lease, it gave its consent for Casler to continue on a month to month basis to April 1, 1959, "Terms and conditions for the extended period will remain the same as provided in the above-mentioned lease." (Plaintiff was injured December 19, 1958.)

■ Continental cites and we admit that this Court has held that there is a distinction between a renewal and an extension of a lease (Clifford v. United States Fidelity & Guaranty Co., 119 Okl. 133, 249 P. 938, 941) and that a stipulation to renew requires the making of a new lease. It is our conclusion, however, that under the present circumstances there was not a renewal and a new lease, but as expressed in the letter, there was merely an extension of the existing lease and same was a part of the original term.

■ In 51 C.J.S. Landlord and Tenant § 78, p. 631, it is stated:

"Where a lease is renewed under a contract expressly providing that the

tenant shall hold under the original lease, and subject to its conditions and privileges, it will be deemed to be a continuance of the original lease and the rights and privileges of the parties are to be determined by the terms thereof unless in some particular which is to be governed by different provisions as indicated by the intention of the parties in the original instrument itself."

Continental further complains that the trial court erred in admitting opinion testimony as to ultimate issues, when the subject matter was not one of science or skill or sufficiently complex to require expert testimony. This proposition should be considered pursuant to general rules of law pronounced by this court.

In Tuck v. Buller, Okl., 311 P.2d 212, 66 A.L.R.2d 1043, we held that a wide latitude of discretion is given the trial court in the determination of the admission of expert testimony or expert opinion.

And in City of Tulsa v. Pearson, Okl., 296 P.2d 788, we stated:

"It is only where alleged errors in ruling on the evidence and in instructing the jury cause a miscarriage of justice or constitute a substantial violation of constitutional or statutory right that a judgment based on a jury's verdict will be reversed."

Under this proposition Continental first complains of an irresponsive answer by a witness relative to plaintiff's work area. Plaintiff's counsel asked the witness as to what effect the installation of the cabinets at the rear of the grease room had as to the area in which an employee had to work. Witness answered it would give less room "and made it more dangerous." Upon objection the court sustained a request that the "dangerous" portion of the answer be stricken and the jury admonished not to consider it. We believe that the action of the court rendered the irresponsive statement harmless.

As to the statement regarding the lessening or diminishing of the work area, under the circumstances we regard this as being such an obvious result as to be a matter of common knowledge and not the proper subject of opinion testimony. However, the error was harmless. In Missouri, K. & T. Ry. Co. v. Jones, 32 Okl. 9, 121 P. 623, we stated:

"The admission of incompetent evidence is an error without prejudice, where the fact proved is one of common knowledge."

Continental further contends under this proposition that the trial court erred in admitting expert testimony regarding whether it was appropriate, or not, to stand at the rear of the room and in front of the car while same was being driven over the hoist. Plaintiff's evidence in this respect was that it was necessary to occupy this position in order to guide the drivers and properly position the car. Similar complaint is made to testimony that the lift should have been recessed in the floor to accommodate lower cars and also as to the momentum or power required to move the car upon the boards. It appears from the record that the trial judge was doubtful of the jurors' familiarity with operations in a grease room, or their ability to draw all necessary conclusions from the facts, and permitted the expert testimony. We cannot say that the trial court abused its discretion in admitting such testimony.

In Beasley v. Bond, 173 Okl. 355, 48 P.2d 299, we were concerned with methods of work and in approving the use of expert testimony stated:

"In a case where the subject-matter is one with which the experience and common judgment of the jurors are insufficient to enable them to reach a proper conclusion from the primary facts, there becomes competent, as evidence, the opinion of one who from study and experience is an expert therein."

Under the same proposition Continental complains of the use in questions on behalf of plaintiff, relative to the matter of omission to install guards at the end of the boards, of the terms "safety guards" and "safety factor", and of these terms in the answers of his expert witnesses in expressing their opinions of the added safety to be derived from guards or obstructions upon the boards. The decisions in Maben v. Lee, Okl., 260 P.2d 1064 and Kelso v. Independent Tank Company, Okl., 348 P.2d 855, are cited as authority that the admission of this testimony was prejudicial error. In the Maben case the witness placed the responsibility for the accident on defendant when he testified the collision was caused by defendant, and in the Kelso case the testimony was as to the cause of the collision. In both of these cases we found that the facts and circumstances were within the experience and understanding of ordinary persons, and that the expert opinions invaded the province of the jury because they sought to decide the ultimate issue which the jury was to determine, and were therefore prejudicial.

In the Kelso case we adopted with approval a statement that opinion evidence is admissible whenever the facts are such that inexperienced persons are likely to prove incapable of forming a correct judgment without such assistance and are essential to an intelligent decision. This rule was demonstrated in our decision in Oklahoma Gas & Electric Co. v. Oliphant, 172 Okl. 635, 45 P.2d 1077, where the highly technical business of transmitting electrical current was involved. In that decision we approved admission of expert opinion testimony as to the proper or improper construction of an electrical transmission system, although such opinion would establish an ultimate fact.

From our analysis of the facts and circumstances we conclude the objectionable testimony does not fall within either of the categories involved in the above cases. The evidence regarding installation of the boards consisted of a drawing, photographs and descriptive testimony. The reflected physical condition and evidence sufficiently informed the jury of the facts and circumstances so as to enable it to reach an intelligent decision as to the effect, if any, of the omission or of any installation of stops or blocks without the benefit of opinion evidence. It might be said that the opinion evidence was superfluous because unnecessary, but at any rate it was harmless, since there was other evidence of the same tenor admitted without objection. In H. F. Wilcox Oil & Gas Co. v. Jamison, 199 Okl. 691, 190 P.2d 807, we said:

"A party may not complain of the admission of evidence over his objection, where other evidence of the same tenor was admitted without objection."

We find there was no prejudicial error.

Continental also contends that under the facts and circumstances its negligence, if any, was not the proximate cause of plaintiff's injuries. In support thereof Continental cites Cheatham v. Van Dalsem, Okl., 350 P.2d 593, and Booth v. Warehouse Market, Okl., 286 P.2d 721, and other cases for the proposition:

"The proximate cause of any injury must be the efficient cause which sets in motion the chain of circumstances leading to the injury; if the negligence complained of merely furnishes a condition by which the injury was possible and a subsequent independent act caused the injury, the existence of such condition is not the proximate cause of the injury."

This is a correct statement of law, but is not conclusive as to the present situation. The issue of contributory negligence was resolved by the jury in favor of plaintiff. The issue of negligence as to the installation of the boards and failure to attach stops thereto was determined adversely to Continental and was a finding of primary negligence on the part of Continental. Continental must rely upon the actions of Dumbauld as constituting an intervening cause sufficient to relieve it of liability for its primary negligence. The boards were installed for the express

purpose of raising or elevating the automobiles over the lift. The evidence reflected and in fact we believe it is common knowledge that more power or momentum was required to drive an automobile up and on the boards, and further that unless the momentum and motion of the automobile was arrested by brakes or stops, the vehicle would proceed forward and off of the boards. In view of the conditions and the practice of customers driving their automobiles over the grease lift we cannot say that such an occurrence was not reasonably foreseeable.

 In Yellow Transit Freight Lines, Inc. v. Allred, Okl., 302 P.2d 985, we stated:

"Where competent evidence is introduced on the question of negligence from which reasonable men might draw different conclusions, it is one for the jury, and under like circumstances the question of proximate cause is one for the jury. * * *

"In order for an intervening cause to relieve one guilty of primary negligence from liability such intervening cause must have been the direct, sufficient and proximate cause of the injury and must entirely supersede the original act of negligence. If such intervening cause might reasonably have been foreseen as the natural and probable consequence of the condition created by the primary negligence the original wrongdoer will not be relieved from liability."

See also Meyer v. Moore, Okl., 329 P.2d 676, and Turner v. Gallagher, Okl., 371 P. 2d 733.

Under these authorities we must conclude that under the circumstances plaintiff's contention is not sustained.

The judgment of the trial court is affirmed. In accord with plaintiff's request herein judgment is here rendered against Hartford Accident & Indemnity Co., surety on defendant's supersedeas bond, to be entered and enforced by the trial court as if there rendered.