Charles R. SMITH, Jr., Will H. Smith and Marie S. Smith, Plaintiffs in Error,

v.

E. C. DAVIS and Helen Davis, Defendants in Error.

No. 40820.

Supreme Court of Oklahoma.

July 18, 1967.

R. Rhys Evans, Otey, Johnson & Evans, Ardmore, for plaintiffs in error.

Wallace & Bickford, by Harry L. Bickford, Ardmore, for defendants in error.

IRWIN, Vice Chief Justice.

Defendants in error, herein designated as plaintiffs commenced this action to recover damages allegedly caused by salt water escaping onto their land from salt water pits on an oil and gas lease, which was owned and operated by plaintiffs in error, (defendants).

The jury returned a verdict for plaintiffs and judgment was rendered thereon. Defendants have appealed from the order overruling their motion for a new trial.

Plaintiffs acquired the tract of land involved in January, 1961. Defendants' oil and gas operations were conducted on land that joined plaintiffs' land on the south. Plaintiffs alleged that defendants stored salt water from their oil and gas operations in two open salt water pits and in May and June of 1961, permitted salt water to overflow from the pits and flow over plaintiffs' land. In so far as pertinent to this appeal, plaintiffs sought damages for permanent damage to a portion of their land, for loss of lespedeza and bermuda grass, and for loss of a pecan crop from 10 pecan trees.

Defendants contend that plaintiffs' evidence was not sufficient to justify any recovery for these alleged damages. Defendants state the sole evidence presented by plaintiffs as to the cause of the alleged damages was the two different overflows of defendants' salt water pits. They argue the evidence fails to show the overflows carried any salt or deleterious substance, which would cause any detriment to plaintiffs' land; that there was no analysis of water samples from the salt water pits nor of the water flowing down the ravine during the rain; that the only expert evidence as to the salt content of the soil on plaintiffs' land was offered by the defendants and it reflects the salt content as about normal; and that there was no evidence showing any permanent damage to plaintiffs' land or that the pecan crop was in any way affected or damaged by the two overflows.

The force and effect of defendants' contentions and argument is that plaintiffs failed to prove any cause of action entitling them to any relief. This is an action of legal cognizance and in considering the issues presented, this Court is guided by well established rules of law. The case of Leslie v. Hammer, 194 Okl. 535, 153 P.2d 101, involved an action for failure to keep salt water impounded and letting the same escape into a pasture where plaintiffs kept livestock. In Leslie we held:

"As a general rule the proximate cause of an injury is a question of fact and only becomes a question of law where the evidence together with all inferences which may be properly deduced therefrom is insufficient to show a causal connection between the alleged wrong and the injury."

In Kennedy v. Deckard, Okl., 278 P.2d 843, we held that the sufficiency of the evidence to sustain a judgment in a law action will be determined in the light of the

evidence tending to support the same, together with every reasonable inference deducible therefrom, rejecting all evidence adduced by the adverse party which conflicts with it.

We will now review the evidence to determine if plaintiffs have proved their cause, or causes of action, entitling them to the judgment rendered on the jury's verdict, and in making our determination we will be guided by the above legal concepts.

Plaintiff Davis testified that he was raised in the area and was well acquainted with this particular tract of land; that when he purchased it, about six months before the alleged incidents, there were no specific spots where grass was not growing but there were spots that didn't have any grass; that during two different heavy rains in May and June of 1961, he observed water flowing upon and across his land from the south and he followed said flow to its source, which he stated was defendants' salt water pits; that these two pits were located about three or four hundred feet south of his property line; that he observed the salt water pits overflowing into a ditch or ravine and then draining upon and spreading out across the more level portion of his land; that after these two incidents, and his land dried out, he observed deposits of a white material on the surface in places subjected to these overflows, as reflected in photographs he submitted and supported by other witnesses; that he tasted this white substance and identified it as salt. He testified that in these described places his lespedeza and bermuda grass died; that the leaves on said 10 pecan trees in the affected area wilted and dropped off but his other pecan trees located where the overflow water did not reach them were not affected; that at the time of said overflows the ten pecan trees were in bloom prior to the formation of the pecan and said trees did not produce their crop.

Plaintiffs submitted photographs taken two years after the overflows, which reflect the condition of vegetation in the same general areas shown in photographs taken shortly after said overflows. As to the damaged areas previously growing lespedeza and bermuda grass, plaintiff stated he re-seeded them with vetch and fertilized them but they failed to respond with much success and are now occupied mostly with weeds.

Although defendants produced testimony that they had never observed the salt water pits overflowing, there was sufficient evidence submitted on behalf of plaintiffs for the jury to find that at least one of the salt water pits did overflow in May and June, 1961, and that the overflow flowed onto plaintiffs' land. And, even though defendants presented an expert witness who had taken and analyzed samples of soil from plaintiffs' land at four different locations and testified the salt content as being about normal, with the exception of one sample which reflected a much greater salt content than the other three, there was sufficient evidence submitted on behalf of plaintiffs for the jury to find that the overflow from defendants' salt water pits did contain salt or other deleterious substance that could cause damage to plaintiffs' land and crops. And there is sufficient evidence for the jury to find that the salt or other deleterious substance in the water that overflowed from defendants' salt water pits permanently damaged a portion of plaintiffs' land and caused the loss of his lespedeza and bermuda grass.

However, the sufficiency of the evidence to sustain the verdict for loss of the pecan crop on 10 pecan trees presents another issue. Plaintiff testified that only 10 of his pecan trees were subjected to or affected by the salt water; that said trees averaged about 8 inches in diameter to about one foot; that these ten pecan trees have not produced any nuts since they were subjected to the salt water and some of them have some leaves on them but others have none; that these ten trees were in bloom preparatory to forming the pecans at the time they were subjected to or affected by the salt water; and thereafter their leaves wilted and fell off; that all of plaintiffs' other pe-

can trees, which the salt water did not contact were not affected in any manner.

Plaintiff testified as to the market price of pecans and calculated the gross sum the crop from these ten trees would have returned; he described various items or expenses that would be deducted from this gross sum to ascertain the net profit from said crop, which he calculated to be about $220.00 for that year and this evidence was uncontradicted. However, plaintiff Davis testified "I didn't gather my pecans that year".

Plaintiffs argue that it is immaterial whether or not they harvested the pecan crop from any of the other trees as it was their prerogative.

However forcible as plaintiffs' argument might be there is no evidence that they would have harvested the pecan crop from the 10 pecan trees allegedly damaged had they not been damaged and the 10 pecan trees had yielded pecans. In other words, plaintiffs sought damages for a crop of pecans but failed to offer evidence that they would have harvested the pecans had they not been damaged. This lack of evidence is more apparent when considered with the evidence that they didn't even harvest the pecan crop from the pecan trees that were not damaged. In our opinion the evidence is insufficient to support any award for damages for the pecan crop from the 10 pecan trees allegedly damaged as a result of the salt water flowing onto plaintiffs' land.

The verdict and judgment was rendered in a lump sum. It is impossible to determine whether the same included or did not include any damages for the pecan crop. In plaintiffs' second cause of action they sought $200.00 for destruction of the pecan crop. Since the evidence will not support damages for loss of the pecan crop, that portion of the judgment which may or could be attributable to the loss of the pecan crop can not stand.

The judgment of the trial court is affirmed on condition that plaintiffs, within 15 days after mandate is filed in the trial court, will file a remittitur of $200.00, to-gether with such sum as was allowed for interest thereon. If the remittitur is not filed within the time allowed, the cause will stand reversed and remanded for a new trial. See Stricker v. Vahldick, Okl., 293 P.2d 367.

JACKSON, C. J., and DAVISON, WILLIAMS, BERRY, HODGES and McINERNEY, JJ., concur.

BLACKBIRD and LAVENDER, JJ., concur in part and dissent as to remittitur.