1997 OK 103

**Teresa LOCKHART, Appellant,**

**v.**

**Marette LOOSEN, Appellee.**

No. 86836.

Supreme Court of Oklahoma.

July 15, 1997.

As Corrected Aug. 21, 1997.

Michael E. Smith, of Barnes, Smith & Lewis, P.C., Oklahoma City, for Appellant.

Daniel J. Hoehner, of Chubbuck, Bullard & Hoehner, Oklahoma City, for Appellee.

LAVENDER, Justice.

¶ 1 Dispositive of Loosen's appeal is whether there are factual issues which should have been resolved by the trier of fact before it dismissed her claim with prejudice. Application of traditional common-law principles of causation require that Lockhart's claim be remanded to the district court for further proceedings.

## I

### FACTS AND PROCEDURAL HISTORY

¶ 2 Lockhart alleges that Loosen—knowing she had genital herpes—engaged in sexual intercourse with David Lockhart [appellant's husband]. She contends that Loosen not only failed to warn Lockhart's husband of her contagion but also affirmatively communicated to him that she did not have any sexually transmittable diseases [STD]. Lockhart later contracted herpes simplex virus II from her husband. Appellant alleges that Loosen knew that her sexual liaison with Mr. Lockhart was extramarital and was aware of his wife's identity.

¶ 3 Seeking redress for the harm related to contracting herpes, Lockhart brought an action against Loosen based upon theories of negligence, fraud, the intentional and negligent infliction of emotional distress and negligence *per se*. Loosen moved for the suit's dismissal, urging (1) that David Lockhart's infidelity was the proximate cause of his wife's harm and (2) that she owed no duty of care to the wife. The trial court dismissed the case with prejudice and this appeal followed. The Court of Civil Appeals [COCA] affirmed the dismissal below on all theories of liability except negligence. Loosen sought certiorari which we granted.[1]

## II

### THE STANDARD OF REVIEW

¶ 4 A trial court's dismissal of an action for failure to state a claim upon which relief can be granted is reviewed *de novo*.[2] To assay the sufficiency of the plaintiff's petition to state a legally cognizable claim we must determine whether relief is possible under any set of facts that could be proved consistent with the pleadings' allegations.[3] All inferences and conclusions which can be deduced from the evidentiary materials must be drawn in the light most favorable to the

---

**1.** In her answer to the petition for certiorari Lockhart did not contest the COCA's holding which sustained the correctness of the trial court's dismissal of her claim on fraud and intentional-infliction-of-emotional-distress theories. The settled-law-of-the-case doctrine bars from re-litigation issues (a) finally settled in the review process or (b) those that the aggrieved party has failed to timely raise in the course of the appellate contest. Hence, these theories of liability are now beyond the scope of our reviewing cognizance. *Nichols v. Mid–Continent Pipe Line Co.*, 933 P.2d 272, 281 (Okla.1996); *Jackson v. Jones*, 907 P.2d 1067, 1074 n. 37 (Okla.1995); *Morrow Dev. v. American Bank and Trust*, 875 P.2d 411, 413 (Okla.1994); *Hough v. Leonard*, 867 P.2d 438 (Okla.1993).

**2.** *Hayes v. Eateries, Inc.*, 905 P.2d 778, 780 (Okla. 1995); *Indiana Nat. Bank v. D.H.S.*, 880 P.2d 371, 375 (Okla.1994); *Gay v. Akin*, 766 P.2d 985, 989 n. 13 (Okla.1988).

**3.** *Delbrel v. Doenges Bros. Ford*, 913 P.2d 1318, 1319 (Okla.1996); *Ind. Nat'l. Bank, supra* note 2 at 376; *Niemeyer v. U.S. Fidelity and Guar. Co.*, 789 P.2d 1318, 1321 (Okla.1990).

non-moving party.[4] Further, to resist a motion to dismiss it is not necessary for a plaintiff to either identify a specific theory of recovery or to identify the correct remedy or relief to which he/she may be entitled.[5]

¶ 5 Generally motions to dismiss are viewed with disfavor. Under most circumstances a plaintiff's petition is *only* dismissible (1) for want of a cognizable legal theory of liability or (2) for insufficient facts under the advanced theory.[6]

## III

### A *THIRD PARTY* MAY NOT PREDICATE A NEGLIGENCE-*PER-SE* THEORY OF LIABILITY ON A VIOLATION OF 63 O.S.1991 § 1–519's PROVISIONS

¶ 6 Plaintiff's claim rests in part upon Loosen's alleged violation of a statutory duty[7] which, Lockhart asserts, constitutes negligence *per se.* A statute's violation is deemed negligence *per se* if the claimed injury (a) was caused by the law's violation, (b) was of the type intended to be prevented by the statute, and (c) the injured party was a member of the class meant to be protected by the statute.[8]

¶ 7 Discernment of legislative intent is required to place the plaintiff within the class of persons meant to be protected by the ambit of 63 O.S.1991 § 1–519.[9] It is the ascertainment of this intent which is the cardinal rule of statutory construction.[10] A

statute's language, when given its plain and ordinary meaning, is the yardstick for divining the drafters' objective.[11] Here legislative intent becomes clear when the language of the entire, key § 1–519 phrase—"to expose any other person *by the act of copulation or sexual intercourse*" [Emphasis added]—is considered. The legislative enactment proscribes persons with active, transmittable venereal diseases *from engaging in sexual intercourse* with other persons. The parties whom the act intends to protect are those *with whom an infected person would copulate.* The statute does not impose upon the infected person a duty to communicate the fact of their contagion to their partners or to third persons. *It requires them not to engage in sexual intercourse while their condition is infectious.*

¶ 8 Lockhart—a third party under this statute's aegis—may not assert a negligence-*per-se* theory of liability against Loosen based upon a violation of § 1–519's terms. Loosen did not engage in sexual intercourse with her and had no affirmative statutory duty to inform Lockhart of her contagion, if any. If the onus of § 1–519's language rests upon anyone, it rests upon the plaintiff's husband. When the straightforward language of the act is considered, it is obvious (1) that the plaintiff is not a member of the class meant to be protected by the statute's language and (2) the act's language does not

---

4. *Hoyt v. Paul R. Miller, M.D., Inc.,* 921 P.2d 350, 353 (Okla.1996); *Frazier v. Bryan Memorial Hosp. Auth.,* 775 P.2d 281, 287 (Okla.1989)

5. *Ind. Nat'l. Bank, supra* note 2 at 375; *Great Plains Federal S & L v. Dabney,* 846 P.2d 1088, 1096 (Okla.1993) (Opala, J., concurring).

6. *Ind. Nat'l. Bank, supra* note 2 at 375.

7. The statutory duty asserted to have been violated arises under the terms of 63 O.S.1991 § 1–519 which provide in pertinent part:

   "**Diseased persons—Marriage or sexual intercourse**
   It shall be unlawful and a felony for any person, after becoming an infected person and before being discharged and pronounced cured by a physician in writing, to marry any other person, or to expose any other person *by the act of copulation or sexual intercourse* to such

venereal disease or to liability to contract the same." [Emphasis added.]

8. *Boyles v. Oklahoma Natural Gas Co.,* 619 P.2d 613, 618 (Okla.1980); *Elam v. Loyd,* 201 Okl. 222, 204 P.2d 280, 282 (Okla.1949). *See also Earl W. Baker & Co. v. Lagaly,* 144 F.2d 344, 346 (10th Cir.1944).

9. For the pertinent terms of 63 O.S.1991 § 1–519, see *supra* note 7.

10. *Riffe Petroleum Co. v. Great Nat. Corp., Inc.,* 614 P.2d 576, 579 (Okla.1980); *Stemmons, Inc. v. Universal C.I.T. Credit Corp.,* 301 P.2d 212, 216 (Okla.1956).

11. *Tinker Inv. & Mortg. v. Midwest City,* 873 P.2d 1029, 1038 (Okla.1994); *City of Bethany v. Hill,* 509 P.2d 1364, 1365 (Okla.1973); *Applications of Oklahoma Turnpike Authority,* 277 P.2d 176, 182 (Okla.1954).

create a duty of care which is owed to someone other than a sexual partner.

## IV

## THE NEGLIGENCE–RELATED CLAIM

### A

¶ 9 Under Oklahoma's extant jurisprudence the three essential elements of a prima facie case of negligence are: (1) a duty owed by the defendant to protect the plaintiff from injury, (2) a failure to properly perform that duty, and (3) the plaintiff's injury being proximately caused by the defendant's breach.[12] Actionable negligence requires that the act complained of be the *direct cause* of the harm for which liability is sought to be imposed.[13] Further, whether the complained of negligence is the proximate cause[14] of the plaintiff's injury is dependent upon the harm (for which compensation is sought) being the result of **both** *the natural and probable* consequences of the primary negligence.[15] This latter determination is critical to assaying the foreseeability of the injury as a result of the initial negligence and hence to establishment of a prima facie case.[16]

¶ 10 For an intervenor's act to become a *"supervening cause"* and cut off possible liability for the original negligence, it must (1) be independent of the primary negligence, (2) be adequate *of itself* to bring about the injury complained of and (3) not be a reasonably foreseeable event.[17] When such an act qualifies as a *supervening cause*, the original negligence mutates into a mere *condition* and as a matter of law is no longer actionable.[18] When, however, the intervening act is a *reasonably foreseeable consequence* of the primary negligence, the original wrongdoer will not be relieved of liability.[19] Also, where the primary act of negligence is not superseded by a second cause—*i.e.*, continues to operate concurrently, so that damage is the result of both causes acting in concert—each act may be regarded as the proximate cause and the wrongdoers will be jointly and severally liable for the plaintiff's compensable harm.[20]

¶ 11 Traditionally, causation in a negligence action lies within the realm of fact, not law.[21] Whether a negligent event's injurious consequences could have been reasonably foreseen presents a jury question.[22] Whether an intervening act is foreseeable also calls for *an evaluative determination by*

12. *Lay v. Dworman*, 732 P.2d 455, 456 (Okla. 1987); *Thompson v. Presbyterian Hosp., Inc.*, 652 P.2d 260, 263 (Okla.1982); *Sloan v. Owen*, 579 P.2d 812 (Okla.1977); *Nicholson v. Tacker*, 512 P.2d 156, 158 (Okla.1973).

13. *Graham v. Keuchel*, 847 P.2d 342, 348 (Okla. 1993); *Thompson, supra* note 12 at 263.

14. An event's proximate cause is that "which in a natural and continuous sequence, unbroken by an independent cause, produces the event and without which the event would not have occurred." *Johnson v. Mid–South Sports, Inc.*, 806 P.2d 1107, 1109 (Okla.1991) [quoting *Gaines v. Providence Apartments*, 750 P.2d 125, 126–27 (Okla.1988)].

15. *Norman v. Scrivner–Stevens Co.*, 201 Okl. 218, 204 P.2d 277, 279 (Okla.1949). "It is not enough to prove that the accident is the natural consequence of the negligence. It must also have been the probable consequence." *Id.* 204 P.2d at 279.

16. *Atherton v. Devine*, 602 P.2d 634, 636 (Okla. 1979).

17. *Minor v. Zidell Trust*, 618 P.2d 392, 394 (Okla. 1980).

18. *Thompson, supra* note 12 at 264; *Zidell Trust, supra* note 17 at 395.

19. *Turner v. Gallagher*, 371 P.2d 733, 733–34 Syl. 1 (Okla.1962).

20. *Gallagher, supra* note 19 at 736; *City of Altus v. Wise*, 193 Okl. 288, 143 P.2d 128, 131 (Okla. 1943). *See also Oklahoma Ry. Co. v. Mount*, 155 Okl. 275, 9 P.2d 11, 13 (Okla.1932); *see also Missouri–Kansas–Texas Railroad v. Ingram*, 322 F.2d 286, 291 (10th Cir.1963).

21. *Dirickson v. Mings*, 910 P.2d 1015, 1020 (Okla.1996); *Bradford Securities v. Plaza Bank and Trust*, 653 P.2d 188, 190 (Okla.1982); *Atherton, supra* note 16 at 637; *Smith v. Davis*, 430 P.2d 799, 800 (Okla.1967).

22. *England v. Kilcrease*, 456 P.2d 521 (Okla. 1969); *Continental Oil Co. v. Ryan*, 392 P.2d 492 (Okla.1963).

*the trier of fact.*[23] It is only "where the evidence together with all inferences which may be properly deduced therefrom is insufficient to show a causal connection between the alleged wrong and the injury" that the issue of proximate cause becomes a question of law.[24]

## B

¶ 12 The common-law principles of causation, applicable here, were succinctly summarized in *Graham v. Keuchel,* 847 P.2d 342 (Okla.1993), where the Court—in assessing liability between an original wrongdoer and an intervenor [referred to in its opinion as "third party"]—held:

> A person is not *generally* deemed *liable* at common law for a *third party's deliberate act. A third person's intentional tort is a supervening cause of the harm that results*—even if the actor's negligent conduct created a situation that presented the *opportunity* for the tort to be committed— *unless* the actor realizes or should realize the *likelihood* that the third person might commit the tortious act. A negligent actor is *not* bound to *anticipate* another's wrongful act *after the latter has discovered the danger* that arises from the former's negligence. *Lapse of time* or other reason— such as, e.g., the third person's *discovery* of the original actor's negligence or the former's *deliberate assumption of control* of the situation—may cause the *duty to prevent harm to another*, threatened by the original actor's negligent conduct, to shift from that actor to the third person. When this happens the *third person's failure to prevent the threatened harm may be a supervening cause.* [Citations omitted.] *Id.* at 350–51.

It is through the lens of these principles and examination of the facts as disclosed by the record and the logical inferences that can be drawn from them that the propriety of the trial court's dismissal of Lockhart's negligence claim is determined. There is a paucity of facts in the record. Loosen stipulated that she has herpes only for purposes of the motion to dismiss. She did not stipulate that she had not told Mr. Lockhart of this fact. The record does not evidence whether Mr. Lockhart had developed symptoms of, or knew that he had, herpes before he engaged in sex with the plaintiff.

¶ 13 An essential element of Lockhart's proof is that a duty of care is owed to her by Loosen. Actionable negligence requires that Loosen's purported failure to inform Mr. Lockhart of her contagion be the *direct* cause of the plaintiff's injury— *i.e.,* the contraction of herpes. While normally Loosen would owe no duty of care to the wife, a third party, every person is under a duty to exercise due care in using that which he/she controls so as not to injure another.[25] If Loosen knew or should reasonably have known that she had herpes[26] and copulated with Mr. Lockhart during a period when she was infectious, under common-law principles she had a duty to warn him of her contagion. Further, if Loosen knew that Mr. Lockhart was copulating with another person and could identify that person [whether that person was married to Lockhart or not], it would be reasonably foreseeable to Loosen that silence about her infectious state—*i.e.,* a breach of the duty of care owed to her sexual partner—could result in the transmittal of herpes to that third person. Under this hypothetical factual scenario, the trial court could determine that it was reasonably foreseeable to Loosen that a *natural and probable* consequence of her silence would be the transmittal of this highly contagious disease[27] to this plaintiff.

---

**23.** *Jackson, supra* note 1 at 1073; *see also* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 45 (5th ed. 1984).

**24.** *Smith, supra* note 21 at 800 [quoting *Leslie v. Hammer,* 194 Okl. 535, 153 P.2d 101, 102 Syl. 1 (Okla.1944)]; *Norman, supra,* note 15 at 278.

**25.** *Ingram, supra* note 20 at 291.

**26.** In order for a duty to arise, those persons bearing the duty's onus must have knowledge that their acts or omissions involve danger to another. *Larrimore v. American Nat. Ins. Co.,* 184 Okl. 614, 89 P.2d 340, 345 (Okla.1939).

**27.** Herpes, the country's most prevalent sexually transmitted disease, currently affects 31 million Americans—ten times as many people as were known to have the disease in 1966. Sharlene A.

¶14 If Loosen did *not* know or have reason to know of her contagion, her silence would not rise to the level of actionable negligence as a matter of law. If (1) Loosen told Mr. Lockhart of her disease *before he engaged in sex with his wife*, or (2) Mr. Lockhart knew that he had contracted a venereal disease before he engaged in sex with his wife, Loosen's silence—which potentially could have been the proximate cause of the wife's injury—would evolve into a mere condition.[28] This is so because upon either of the suggested facts occurring, Mr. Lockhart's act would be adequate of itself to cause the plaintiff's injury. Also, if Mr. Lockhart were armed with knowledge of his potential infection, it would not be *reasonably foreseeable* that he would engage in sexual relations with the plaintiff and his copulation with his wife would become a *supervening* cause.[29] If either of these factual scenarios are established or Loosen is shown to have no knowledge of her contagion when she had sex with Mr. Lockhart, proximate cause would no longer be a jury question and Loosen's liability could properly be reached by the court as a question of law.

¶15 The dearth of facts in this case renders the trial court's dismissal of Lockhart's claim premature. Upon the record before us the court cannot say that relief to Lockhart is impossible under the disclosed facts and the inferences which can be deduced from them. Her case must be remanded to the district court for additional findings of facts which greater define the knowledge of and relationship between these parties. The further development of facts is a required predicate to application of the common-law principles of causation delineated above. It is only then that the trial court can properly decided whether Lockhart has asserted a cognizable claim for negligence.

> McEvoy, *"Tort Liability for Sexually Transmitted Diseases"*, 23–SUM Brief 14 (Summer, 1994).

**·28.** For a discussion of the evolution of a *cause* into a *condition*, see *Thompson, supra* note 12 at 264; *Thur v. Dunkley*, 474 P.2d 403, 405 (Okla. 1970); *Norman, supra* note 15 204 P.2d at 279.

**29.** *See Thompson, supra* note 12 at 264; *Zidell Trust, supra* note 17 at 394.

## C

¶16 Lockhart asserts that the Court of Civil Appeal's decision allows her to proceed against Loosen on a negligent-infliction-of-emotional-distress theory of liability as a separate theory of liability from negligence. This is not so. Under Oklahoma's jurisprudence the negligent causing of emotional distress[30] is not an independent tort, but is in effect the tort of negligence.[31]

## V

## CONCLUSION

¶17 Unquestionably there is a legislative intent to control and prevent the spread of venereal diseases. To accomplish this purpose the Legislature has prohibited infected persons from copulating. If there is to be found a duty of care in § 1–519's proscription, it is owed to the person with whom the diseased person would engage in sexual intercourse and not to that person's succeeding sexual partners—whether these people be wife/husband, significant other and/or other sexual paramour.

¶18 Today's pronouncement is not an extension of tort liability for an *indeterminate* time to an *indeterminate* class of third parties. Loosen's liability to Lockhart must be predicated, if at all, on traditional common-law principles of proximate cause. If Loosen knew the plaintiff's identity and recognized her as someone with whom her sexual partner would later copulate and she did not tell him she had herpes before he engaged in sex with this third person, it can be found that a natural and probable consequence *of her silence* is that Lockhart would communicate this highly contagious disease to the third person. Loosen's *non-disclosure of the criti-*

**30.** In 1976 Oklahoma abolished the civil causes of action for alienation of affections and seduction of a spouse. 76 O.S.1991 § 8.1. Hence, Lockhart's emotional distress attributable to her husband's affair with Loosen is not compensable.

**31.** *See Kraszewski v. Baptist Medical*, 916 P.2d 241, 243 n. 1 (Okla.1996). For further discussion of the dependent nature of this tort, see *Burgess v. Superior Court (Gupta)*, 2 Cal.4th 1064, 9 Cal.Rptr.2d 615, 831 P.2d 1197, 1200 (1992).

*cal fact of her infection* could be deemed a breach of the ordinary care owed under the circumstances and a direct cause of Lockhart's infection. The plaintiff could then be said to have asserted a legally cognizable claim.

¶ 19 Under the criteria established by Oklahoma's extant jurisprudence and in light of the inferences which can be drawn from the record facts, the trial court's dismissal of Lockhart's claim cannot be sustained. It cannot be said that relief was not available to Lockhart under any set of facts that could be proved consistent with the pleadings' allegations or the inferences which could be drawn from them.

¶ 20 Upon certiorari previously granted,

THE COURT OF CIVIL APPEALS' OPINION IS VACATED IN PART AND THE DISTRICT COURT'S DECISION IS REVERSED IN PART AND THE CAUSE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH TODAY'S PRONOUNCEMENT.

¶ 21 KAUGER, C.J., SUMMERS, V.C.J., and HODGES, HARGRAVE and WATT, JJ., concur.

¶ 22 ALMA WILSON, J., concurs in part; dissents in part.

¶ 23 SIMMS and OPALA, JJ., dissent.

---

**1.** *This court will affirm a correct judgment on any applicable theory. Bivins v. State ex rel. Oklahoma Memorial Hosp.,* 1996 OK 5, 917 P.2d 456, 465; *Matter of Estate of Maheras,* 1995 OK 40, 897 P.2d 268, 272 n. 5; *Wright v. Grove Sun Newspaper Co., Inc.,* 1994 OK 37, 873 P.2d 983, 993; *Messenger v. Messenger,* 1992 OK 27, 827 P.2d 865, 874; *Willis v. Nowata Land and Cattle Co.,* 1989 OK 169, 789 P.2d 1282, 1286–87; *Davidson v. Gregory,* 1989 OK 87, 780 P.2d 679, 685 n. 23; *Benham v. Keller,* 1983 OK 68, 673 P.2d 152, 154; *Utica Nat'l Bank and Trust v. Assoc. Prod.,* 1980 OK 172, 622 P.2d 1061, 1066; *Thompson v. Inman,* Okl., 482 P.2d 927, 937 (1971); *Holloway v. Ward,* 84 Okl. 247, 203 P. 217, 219 (1921).

**2.** Criminal conversation at common law is a husband's action in tort for harm occasioned by a third party's intercourse with the husband's wife. *Kline v. Ansell,* 287 Md. 585, 414 A.2d 929, 930 (1980); *Turner v. Heavrin,* 182 Ky. 65, 206 S.W.

OPALA, Justice, dissenting.

¶ 1 Concluding that the wife's claim against her husband's *infection-bearing paramour* is an actionable tort, the court reverses the nisi prius dismissal order and remands the cause for further proceedings. I recede from today's pronouncement.

**I**

¶ 2 **THE TRIAL JUDGE'S DECISION FOR THE DEFENDANT SHOULD BE AFFIRMED ON A THEORY NOT URGED AT NISI PRIUS**

¶ 3 Every trial judge's decision comes to a court of review clothed with a presumption of correctness. If supported by law and evidence, the *nisi prius* judgment will be affirmed even if it was based on an incorrect theory and neither party tendered below an appropriate analysis of the applicable law.[1] *Criminal conversation* is the true anchor of today's claim.[2] As that common-law tort no longer is remediable, the nisi prius decision to dismiss the wife's action should be affirmed. 76 O.S.1991 § 8.1.[3]

**II**

¶ 4 **THE HISTORICAL LINK BETWEEN CRIMINAL CONVERSATION AND SEDUCTION**

¶ 5 Criminal conversation and seduction are bound, one to the other, by their common

---

23, 23–27 (1918); W. PROSSER, THE LAW OF TORTS § 124, pgs. 915–30 (5th ed. 1981); Jacob Lippman, *The Breakdown of Consortium,* 30 COL. L.REV. 651, 654–660 (1930). By modern law criminal conversation became actionable at the wife's suit as well. *Russo v. Sutton,* 310 S.C. 200, 422 S.E.2d 750, 752 (1992); *Rivers v. Rivers,* 292 S.C. 21, 354 S.E.2d 784, 789 (App.1987); *Kline, supra* 414 A.2d at 930–31; *Vaughn v. Blackburn,* 431 S.W.2d 887, 889 (Ky.App.1968); *Turner, supra* at 27; *Nolin v. Pearson,* 191 Mass. 283, 77 N.E. 890, 890–893 (1906); *W. PROSSER, supra,* § 124 at 916; *Lippman, supra* at 662–68.

**3.** The terms of 76 O.S.1991 § 8.1 provide:

From and after the effective date of this act, the alienation of the affections of a spouse of sound mind and legal age or *seduction of any person of sound mind and legal age* is hereby abolished as a civil cause of action in this state. [Emphasis added.]

antecedent in the writ of *trespass vi et armis*. A recognition of this historical link no doubt led this court to hold in *Lynn v. Shaw*[4] that by the provisions of 76 O.S.1991 § 8.1[5] criminal conversation—though not mentioned there *eo nomine*—nonetheless stands abrogated along with seduction. Both of these torts owe their genesis to the early common-law remedy for enticing away a servant and for depriving the master of a property interest in the consequential loss of the servant's services.[6]

¶ 6 All actions for tortious interference with a person's marriage relation lay in *trespass vi et armis*. The wife was treated as her husband's servant; a loss of her services, when occasioned by a third party's enticement, was recoverable. Much like a servant, the wife was regarded as her husband's personal property.

¶ 7 Two actions developed to make marriage interference remediable at common law.[7] The *first* of these, called *enticement*, lay for inducing a wife to *leave her husband*. Enticement later underwent a metamorphosis into present-day alienation of affections.[8] The *second* of these torts was called *seduction*. The latter, in which no element of physical separation of the husband from his

wife was necessary, required an adulterous relationship between the defendant and the plaintiff's spouse.[9] The remedy's function was (a) to vindicate the husband's property rights in his wife's *person*, (b) to punish the defendant for placing the legitimacy of progeny in doubt, and (c) to redress the act of defiling plaintiff's marriage and family honor. It is seduction that evolved into modern-day criminal conversation.[10]

## III

¶ 8 **STATUTORY ABROGATION OF CRIMINAL CONVERSATION IS ALL–INCLUSIVE**

¶ 9 The *gravamen* of *this wife's* claim is harm from venereal disease (genital herpes) alleged to have been contracted from the husband who in turn came to be infected through criminal conversation with the paramour-defendant. The wife's contagious condition is but an element of her damage from the defendant's *criminal conversation*. Because that delict stands abrogated by § 8.1, all the elements of damage that would have been recoverable by the abolished claim, if it were still remediable, are now *damnum absque injuria*.[11]

4. *Lynn v. Shaw*, 1980 OK 179, 620 P.2d 899, 902. According to the teaching of *Lynn*, seduction and *criminal conversation* are so intertwined that *seduction's* abrogation by the provisions of 76 O.S. 1991 § 8.1 also abolishes *criminal conversation*. The latter is clearly incorporated within the term *seduction*.

5. For the provisions of § 8.1 see *supra* note 3.

6. *See Annot.*, Alienation of Affections of Child or Parent, 60 A.L.R.3d 931, 934 (1974). The early common-law tort remedies for harm to the spousal status are an offshoot from the master's action against third parties for enticing away his servants and depriving him of their services. W. PROSSER, *supra* note 2, § 124 at 915–16. The provisions of 76 O.S.1991 § 8, which are declaratory of the common law on this very subject, are:

The rights of personal relation forbid:
1. The abduction of a husband from his wife, a wife from her husband or of a parent from his child.
2. The abduction or enticement of a child from a parent, or from a guardian entitled to its custody, or of a servant from his master.
3. An injury to a servant.

7. W. PROSSER, *supra* note 2.

8. *Lynn v. Shaw*, *supra* note 4; *see also Bladen v. First Presbyterian Church of Sallisaw*, 1993 OK 105, 857 P.2d 789, 796.

9. Criminal conversation consists of exactly the same elements as seduction. Adultery is the *sine qua non* of criminal conversation. The former term, used more often in criminal law, may be regarded in the tort context as the functional equivalent of the latter. *Lynn v. Shaw*, *supra* note 4 at 901.

10. *Lynn v. Shaw*, *supra* note 4 at 903.

11. For an explanation that damage from venereal disease, contracted through sexual intercourse, may be recovered in an action for seduction as the "proximate consequence" of actionable copulation, see *Abrahams v. Kidney*, 104 Mass. 222, 6 Am.Rep. 220 (1870).

*Damnum absque injuria* means damage without out a legal (actionable) wrong. *Houck v. Hold Oil Corp.*, 1993 OK 166, 867 P.2d 451, 462 n. 7; *St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.*, 1989 OK 139, 782 P.2d 915, 920; *Davis Oil Co. v. Cloud*, 1986 OK 73, 766 P.2d 1347, 1349.

## IV

### ¶ 10   THE CONCUREE'S ASSAULT ON THIS DISSENT'S LEGAL SOUNDNESS

¶ 11   The concuree's analysis, while morally appealing, is legally unpersuasive. Plaintiff seeks to recover *ex delicto*. Her damage consists of a venereal disease. It was transmitted by her husband who had allegedly contracted it from the defendant. The defendant's adulterous intercourse with plaintiff's husband—the claimed source of plaintiff's infection—clearly is not a tort for which the plaintiff may seek redress. The injurious consequence of something that is not actionable is *damnum absque injuria.*

¶ 12   Criminal conversation consists at common law of sexual intercourse with a married person other than the actor's spouse. It is remediable against the third party by an action of the wronged spouse. All acts of intercourse that fall under this rubric have been placed by statute *dehors* the bounds of delictual culpability. The § 8.1 abrogation is entirely *unqualified and all-inclusive. Embraced within its immunity purview are all disease carriers who acted sans or with scienter.*[12] The concuree *pretends* that the liability recognized in this case is not within the immunized range of § 8.1 because here the court's tort protects only from disease spread rather than against the invasion of a marital bed. The distinction is patently specious as well as ludicrous. The spread of venereal disease is accomplished by copulation, and *all* sexual intercourse condemned by criminal conversation is statutorily immunized from tort responsibility, whether infection follows or not and regardless of the actor's scienter. Nothing more need really

be said to repel the concuree's attack on this dissent's legal soundness and to show that *the only legitimate solution* to the moral dilemma posed by the problem at hand must, if at all, come through an amendment of § 8.1 that would create an exception for disease-transmitting criminal conversation.

¶ 13   The concuree's other apologia also is flawed because it impermissibly dichotomizes a *single* and *indivisible* class of statutorily abrogated criminal conversation tort. Without a scintilla of textual support in the controlling statute, 76 O.S.1991 § 8.1, *treated as abolished are only* those acts of criminal conversation by which no venereal disease came to be spread. *Preserved from legal extinction* is that statutorily immunized copulation in which the actor's knowledge of his (or her) capacity to transmit a disease can be shown.[13] This approach pretends to do away with *intercourse* as the *tort's gravamen* and to substitute the offending sexual partner's *scienter* as a tort completely severable from criminal conversation.[14] No matter what verbal camouflage may be used, *intercourse* remains the gravamen of the tort crafted for this case by today's opinion. That is how the disease is said to have passed *from* the defendant *through* plaintiff's husband *to* the plaintiff. Equally irrefutable under the scenario tendered by this case is that the intercourse alleged as the source of plaintiff's infection is her husband's copulation with the defendant—an act of criminal conversation that clearly lies within the statutory abrogation and hence stands *dehors* the bounds of legislatively recognized delictual culpability. So long as the terms of § 8.1 remain unamended, there is no room here for creating judicially a legal remedy that would give this wronged spouse her moral due. Today's largesse in the name of the common law plainly

---

12. Guilty knowledge is known as scienter. *State ex rel. Oklahoma Bar Ass'n v. Eakin*, 1995 OK 1166, 914 P.2d 644, 650 n. 22; *Dayton Hudson Corp. v. Amer. Mut. Lia. Ins. Co.*, 1980 OK 193, 621 P.2d 1155, 1161.

13. The court describes the requisite knowledge an infecting sexual partner must have with respect to his (or her) infectious capacity as that

which a person "knew or should reasonably have known."

14. *Scienter*, as used by the court, is but a gauge for assessing the delictual culpability in terms of the actor's degree of care or, if infliction was willful, then in terms of the offender's state of mind. It only qualifies the act of transmitting a

offends the § 8.1 mandate.[15]

¶ 14 More simply put, *in this lawsuit against the husband's sexual partner* plaintiff's harm from her genital herpes is nothing more or less than damage inflicted without a legal wrong. Transmission of her venereal disease did not occur without copulation, and the infection-bearing intercourse is immunized from tort liability. I hence cannot join the view that criminal conversation may be actionable when it is shown that the offending spouse was infected by an actor who knowingly transmitted the disease by intercourse.

## V

### SUMMARY

¶ 15 Today's opinion makes *criminal conversation actionable*, once again, if the intercourse on which it is rested ultimately infected the wronged spouse with a sexually transmitted disease. Legislative abrogation does *not confine* the delict's abolition range to but noninfectious extramarital affairs. The line drawn by the court in an effort to preserve from extinction some remnant of the *broadly* abolished liability is absolutely *sans* warrant in the unequivocal text of the abrogating statute, 76 O.S.1991 § 8.1.

¶ 16 Once legislatively rejected, a common-law norm may not be revitalized by judicial fiat.[16] The provisions of § 8.1 effectively extinguished all civil liability that was borne at common law by an offending spouse's sexual partner to the wronged spouse for every injurious consequence of extramarital copulation which, under the rubric of criminal conversation, was treated as tortious. Although this spouse's claim clearly falls within the range of statutorily abrogated civil accountability, the § 8.1 core of tort immunity is rather narrow. Its range

extends to no person other than the third-party intruder upon the marriage and covers only that actor's breached obligation once owed to the nonparticipating spouse. The immunity's sweep is simply coextensive with the law's present recognition that no civilly enforceable duty of sexual abstinence runs any longer to the wronged spouse from an invading stranger to the marriage. But let there be no mistake about the immunity's outer limit. The § 8.1 mandate for removal of some delicts that are anchored on the marriage status from the catalogue of cognizable common-law torts poses absolutely no impediment to an action by any individual, married or single, *for harm inflicted by the defendant's willful or negligent transmission of a disease through sexual intercourse with the plaintiff.* In short, the statute has erased a form of status-based liability and, for assessment of sex-connected tort responsibility, the law's focus has turned on individual person-to-person harm-dealing acts.[17]

¶ 17 I can *neither join* today's pronouncement *nor rejoice* at its birth. The court should affirm the nisi prius order that dismissed this claim for lack of actionable quality.

SUMMERS, Justice, concurring.

¶ 1 The opinion of the Court states that for Plaintiff to recover Loosen must have known or have had reason to know of her disease when she engaged in sexual relations with Plaintiff's husband. (*Emphasis by the Court*). This a simple negligence case. Generally, negligence cases usually involve the "knew or should have known" standard, and acts are measured by those of an ordinary and reasonably prudent person. *See Ingram v. Wal–Mart Stores, Inc.,* 1997 OK 11, 932 P.2d 1128, (material fact as to whether defendant knew or should have known of a

---

disease in terms of the actor's negligence or willfulness.

**15.** For an explanation of the common law's rank that is subordinate to legislation, see *infra* note 16.

**16.** By the mandate of 12 O.S.1991 § 2 the common law remains in full force unless explicitly modified or abrogated by statute. The hierarchy for the state legal system's three sources of law

ascribes to the common law the lowest rank— after the State's constitution and its legislative enactments. *Wright v. Grove Sun Newspaper Co., Inc.,* 1994 OK 37, 873 P.2d 983, 987; *Tate v. Browning–Ferris, Inc.,* 1992 OK 72, 833 P.2d 1218, 1225–26.

**17.** It is this analysis that led me to join the other dissent's view of this case.

dangerous condition). *See also Prosser & Keeton on the Law of Torts,* 182–185 (5th ed. 1984), (where the authors discuss the "knowledge" of a reasonable person): *Restatement (Second) of Torts,* § 8A, 11, 12 (1977) (work uses such phrases as "intent", "reasonably believes", "reason to know", "should know", etc.).

¶ 2   Courts presented with a suit for negligent transmission of a sexual disease have used this "knew or should have known" standard. See *Tischler v. Dimenna,* 160 Misc.2d 525, 609 N.Y.S.2d 1002, 1004 (1994), ("The duty has been found to exist in the relationship between the parties where the defendant knew or should have known that he had a communicable disease."); *Meany v. Meany,* 639 So.2d 229, 235 (La.1994), ("This record contained enough evidence from which a jury could reasonably conclude that Mr. Meany knew, should have known, or should have suspected that he was putting his wife at risk of venereal disease by sexual contact."); *R.W. v. T.F.,* 528 N.W.2d 869, 873 (Minn.1995), (cause of action exists for the negligent transmission of genital herpes where the jury found that the actor "knew or should have known that he had herpes and that he could transmit the disease through unprotected sexual intercourse,. . . .").

¶ 3   It is true that an actual knowledge test may be required in slightly different circumstances. Actual knowledge was used as a standard in cases where a landlord was sued for leasing contaminated premises resulting in the negligent transmission of smallpox. See *Cesar v. Karutz,* 60 N.Y. 229, 19 Am.Rep. 164 (1875); *Minor v. Sharon,* 112 Mass. 477, 17 Am.Rep. 122 (1873). The actions were not allowed unless landlord actually knew of the presence of the contagious disease prior to leasing the premises.

¶ 4   More recently in *Doe v. Johnson,* 817 F.Supp. 1382 (W.D.Mich.1993), that court canvassed the cases and determined that a defendant's actual knowledge of the disease, or knowledge of symptoms, or knowledge of a prior sexual partner's disease status, could all be sufficient to give rise to a duty to warn or a negligence action. *Id.* 817 F.Supp. at 1389–1391. Further, that court noted that certain commentators had suggested that

certain "high risk" behavior patterns or lifestyles dramatically increasing the chance of contracting a contagious disease should also be a factor in determining what the defendant "should know" for the purpose of a negligence action or a duty to warn a plaintiff. *Id.* 817 F.Supp. at 1389–1391.

¶ 5   The briefs on appeal are those filed in the trial court. Neither Plaintiff nor Defendant briefed the issue on the level of knowledge the defendant must have to be liable. However, Plaintiff's brief did cite *Meany v. Meany, supra,* an opinion using the "knew or should have known" standard. The Court's opinion lines up with the weight of authority in stating the test. It is correct.

¶ 6   I respectfully disagree with one of the dissents. Actions for criminal conversation, alienation of affections, and seduction have been and remain abolished in Oklahoma. *Bladen v. First Presbyterian Church of Sallisaw,* 1993 OK 105, 857 P.2d 789, 796; *Lynn v. Shaw,* 1980 OK 179, 620 P.2d 899. These actions are substantially different than that in the present case. Criminal conversation was an action for tortious injury to marital rights by invasion of the conjugal relationship. *Id.* 857 P.2d at 796 n. 11. Recovery was granted on the basis of loss of consortium and services, injury to social position, impairment to family honor and mental suffering. *Id.* Criminal conversation was a "[d]efilement of the marriage bed, sexual intercourse of an outsider with husband or wife, or a breaking down of the covenant of fidelity". Blacks Law Dictionary, 448 (4th ed. 1951), citing, *Young v. Young,* 236 Ala. 627, 184 So. 187, 190, 191 (1938).

¶ 7   Alienation of affections is slightly different, and "[t]he gist of the tort is not sexual intimacy but an interference with the marital relation that changes one spouse's mental attitude toward the other." *Prosser & Keeton on the Law of Torts,* 918 (5th ed. 1984). Seduction was a tort providing for recovery by parents for a tortfeasor's sexual intercourse with the child with the resultant loss of services flowing from a pregnancy. "American courts, in general, have said that loss of services is the gist of the action, which must fail without it." *Id.* at 926. Courts have subsequently minimized this aspect of

loss of services. *Id.* at 927. Our Court recognized this, and explained that in an action based upon seduction a pregnancy need not result, since "the gist of the action is the act of intercourse under promise of marriage." *Johnson v. Harris,* 187 Okla. 239, 102 P.2d 940, 943 (1940).

¶ 8 The action brought today is *not* for defilement of the marriage bed, alteration of a spouse's mental attitude, interference with a child's services, nor for an act of intercourse under promise of marriage. It is brought for the negligent transmission of a disease, and recovery is sought for the resultant illness and damages flowing therefrom. The tort based upon the negligent or wrongful spread of a disease is well established. Some examples are: *Gilbert v. Hoffman,* 66 Iowa 205, 23 N.W. 632 (1885), (negligent transmission of smallpox); *Hendricks v. Butcher,* 144 Mo.App. 671, 129 S.W. 431 (1910), (same); *Smith v. Baker,* 20 F. 709 (S.D.N.Y.1884), (whooping cough); *Kliegel v. Aitken,* 94 Wis. 432, 69 N.W. 67 (1896), (typhoid fever); *Crowell v. Crowell,* 180 N.C. 516, 105 S.E. 206 (1920), (venereal disease); *Duke v. Housen,* 589 P.2d 334, 340 (Wyo. 1979), (gonorrhea); *Earle v. Kuklo,* 26 N.J.Super. 471, 98 A.2d 107, 109 (1953), (tuberculosis).

¶ 9 I respectfully submit that today's opinion in no way resurrects the defunct actions for criminal conversation or seduction.

SIMMS, Justice, dissenting.

¶ 1 I must respectfully dissent as I believe the trial court was correct in deciding there was no actionable negligence in this matter because Loosen owed no legal duty of care to Lockhart. I would affirm that court's dismissal of Lockhart's claim for failure to state a cause of action.

¶ 2 I am authorized to state that Justice Opala joins in the views expressed herein.